STATE OF CONNECTICUT *v.* JOEL TUCKER
(AC 16427)

Lavery, Schaller and Spear, Js.

Argued May 28—officially released September 22, 1998

*James A. Shanley, Jr.*, special public defender, for the appellant (defendant).

*Stephen J. Sedensky III*, senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict*, state's attorney, for the appellee (state).

### Opinion

SPEAR, J. The defendant, Joel Tucker, appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21,[1] and from the judgment of viola-

---

[1] On October 1, 1995, Public Acts 1995, No. 95-142, § 1, amended General Statutes § 53-21. The version of § 53-21 that preceded the current amended version of the statute is applicable in this case. General Statutes (Rev. to 1995) § 53-21, as it applied to the defendant on September 28, 1995, provided: "Injury or risk of injury to, or impairing morals of, children. Any person

tion of probation. The defendant claims that (1) § 53-21 is unconstitutionally vague as applied to the facts of this case,[2] (2) given the trial court's instructions regarding what constitutes an act under § 53-21, there was insufficient evidence to sustain the jury's verdict, and (3) the trial court improperly refused to set aside the violation of probation charge that was based on the conviction in this case. We disagree and affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On September 28, 1995, the defendant went to the home of his eleven year old daughter, the victim, at 150 Whitney Avenue in Bridgeport. The victim had been home from school for several days with tonsillitis and had called the defendant at his mother's home earlier that day requesting that the defendant bring her some money. After using the bathroom, the defendant entered the living room, where the victim was sitting on the couch. As the victim got up to go into the kitchen, the defendant grabbed her arm, causing her to fall to the floor on her back. The defendant positioned himself on top of the victim, face to face, and tried to force his tongue into her mouth. In between repeated attempts to force his tongue into the victim's mouth, the defendant held his hand over her mouth to prevent her from screaming. While resisting the defendant, the victim bit her own tongue. When the defendant eventually got off of the victim after several unsuccessful attempts to force his tongue into her mouth, she grabbed a knife

who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[2] The defendant did not cite any constitutional provisions in his brief. We assume from the cases that he does cite, however, that his challenge is based on an alleged violation of article first, § 8, of the constitution of Connecticut and the fourteenth amendment to the United States constitution.

and told him to leave. The defendant left $20 for the victim on a table and told her, as he departed, to keep the incident between them. The victim immediately called her grandmother, the defendant's mother, to report the defendant's behavior. Thereafter, the police, an ambulance and the victim's relatives arrived at the victim's home.

The next day, several police officers arrived at the home of the defendant's mother to look for the defendant. The defendant was hiding in the attic and did not respond to the officers' repeated calls for him. Eventually, the officers found the defendant hiding behind boxes in the attic. He was arrested at that time.

At the time of his arrest, the defendant was on probation for a conviction of sexual assault. As a result of the incident with the victim, the defendant was charged with violating his probation. The state's substitute information charged the defendant with one count of risk of injury to a child in violation of § 53-21[3] and one count of unlawful restraint in the second degree in violation of General Statutes § 53a-96.[4] The jury returned a verdict of guilty on the charge of risk of injury to a child and acquitted the defendant on the charge of unlawful restraint in the second degree. Because of the conviction, the court subsequently found the defendant to be in violation of his probation. This appeal followed.

---

[3] See footnote 1.

[1] The state's substitute information misstated the statutory language of § 53-21 in the charge as "health *and* morals" instead of "health *or* morals." That fact is immaterial because both parties here have conceded that the trial court correctly instructed the jury that the state need prove only one of the allegations. "Where a charging document alleges, in the conjunctive, that an offense has been committed in more than one way, a guilty finding may stand if the evidence supports a conviction based upon any one of the statutory alternatives." *State* v. *Wohler*, 231 Conn. 411, 415, 650 A.2d 168 (1994); see *State* v. *Chapman*, 229 Conn. 529, 543, 643 A.2d 1213 (1994); *State* v. *Eason*, 192 Conn. 37, 42, 470 A.2d 688 (1984), overruled in part on other grounds, *Paulsen* v. *Manson*, 203 Conn. 484, 491, 525 A.2d 1315 (1987). We will therefore address only the morals provisions of § 53-21 in this case.

I

The defendant first claims that § 53-21 is unconstitutionally vague as applied to the facts of this case.[5] "Our Supreme Court has recognized that vague statutes fail to give fair warning to persons who may be affected as to what conduct is prohibited. A statute should be reasonably specific and direct so that a person of ordinary intelligence has a reasonable opportunity to govern his or her behavior by reference to the words of the statute together with judicial gloss." *State* v. *Ryan*, 48 Conn. App. 148, 153, 709 A.2d 21, cert. denied, 244 Conn. 930, 711 A.2d 729 (1998). Moreover, although "[t]he constitutional requirement of definiteness applies more strictly to penal laws than to statutes that exact civil penalties"; (internal quotation marks omitted) *State* v. *Erzen*, 29 Conn. App. 591, 594, 617 A.2d 177 (1992); "[a] penal statute may survive a vagueness attack solely on a consideration of whether it provides fair warning." (Internal quotation marks omitted.) Id.

Our Supreme Court has described the principle of fair warning as a "principle which mandates that as a matter of due process a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid. . . . [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." (Internal quotation marks omitted.) *State* v. *Pickering*, 180 Conn. 54, 59–60, 428 A.2d 322 (1980). "Lack of precision,

[5] The defendant maintains and the state concedes that this claim, which was not raised in the trial court, is reviewable under *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), "because it implicates the fundamental due process right to fair warning and the record is adequate to facilitate review." *State* v. *Schriver*, 207 Conn. 456, 459, 542 A.2d 686 (1988). We will therefore review this claim.

however, is not, in or of itself, offensive to the require-ment of due process." (Internal quotation marks omit-ted.) *Seals* v. *Hickey*, 186 Conn. 337, 344, 441 A.2d 604 (1982). "Ambiguity is, unfortunately, a common statu-tory ailment. A degree of vagueness is endemic in many statutes. . . . If the meaning of a statute can fairly be ascertained through judicial construction, however, it need not be stricken for vagueness. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citations omitted; internal quotation marks omitted.) *State* v. *Proto*, 203 Conn. 682, 698–99, 526 A.2d 1297 (1987).[6]

"A determination of fair warning is ascertained in several ways. We review prior case law to determine whether the defendant had fair warning that his acts violated § 53-21 [and we] . . . also look to see whether a person of ordinary intelligence would reasonably know what acts are permitted or prohibited by the use of his common sense and ordinary understanding." *State* v. *Erzen*, supra, 29 Conn. App. 594. Because prior case law that "delineate[s] a statute's reach can consti-tute sufficient notice of the acts prohibited to render the statute constitutional as applied to the particular facts of a case"; *State* v. *Pickering*, supra, 180 Conn. 63; we conclude that prior case law on this issue, in conjunction with the exercise of common sense, consti-tuted fair warning to the defendant that his actions were in violation of § 53-21.

---

[6] The void for vagueness doctrine generally embodies the two principles of fair warning and a guarantee against standardless law enforcement. *State* v. *Schriver*, 207 Conn. 456, 459–60, 542 A.2d 686 (1988); see *Mitchell* v. *King*, 169 Conn. 140, 142–43, 363 A.2d 68 (1975). The latter principle is relevant only when a statute is challenged as being unconstitutional on its face. *State* v. *George*, 37 Conn. App. 388, 390 n.2, 656 A.2d 232 (1995); see *State* v. *Pickering*, supra, 180 Conn. 57–58. Because the defendant's claim here is that § 53-21 is unconstitutional as applied to the facts of this case, we address

Our Supreme Court previously reviewed the legislative history of § 53-21 and concluded that the statute was intended "to proscribe two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." (Citation omitted.) *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963). It is against this background that we now analyze the defendant's vague as applied challenge to § 53-21.

The defendant specifically argues that the language of § 53-21 stating that "any act likely to impair the health or morals of any such child" is unconstitutionally vague as applied to the facts of this case because this language did not give him fair warning that his conduct toward the victim was proscribed under the statute. General Statutes (Rev. to 1995) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

With respect to the morals provisions in the second prong of § 53-21, "the meaning of the words 'acts likely to impair the . . . morals of any child [under the age of sixteen years]' have been repeatedly and explicitly elucidated through several opinions of [the Supreme Court]." *State* v. *Pickering*, supra, 180 Conn. 63; see also *State* v. *Schriver*, 207 Conn. 456, 463, 542 A.2d 686

the principle of fair warning only within the context of this vagueness challenge.

(1988); *State* v. *Anderson*, 152 Conn. 196, 197, 205 A.2d 488 (1964).

Our Supreme Court addressed a vague as applied challenge to the morals provisions in the second prong of § 53-21 in *State* v. *Pickering*, supra, 180 Conn. 54. Subsequent case law has since "invoked *Pickering* as the controlling standard for evaluating vagueness challenges to the morals provision of § 53-21." *State* v. *Schriver*, supra, 207 Conn. 463; see *State* v. *Perruccio*, 192 Conn. 154, 161, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984); *State* v. *Smith*, 183 Conn. 17, 20–21, 438 A.2d 1165 (1981). In *Pickering*, where a defendant had sexually molested his daughter, the court held not only that "the deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner is violative of [§ 53-21]"; *State* v. *Pickering*, supra, 64; but that "[t]he defendant's behavior rendered him a *hard-core* violator as to whom the statute was not vague, whatever its implications for those engaged in different conduct." (Emphasis added; internal quotation marks omitted.) Id., 65.

The defendant misconceives the *Pickering* standard, as evidenced by his argument that "[i]f *Pickering* is the standard by which to test whether one has violated the second prong of Section 53-21, [his] conviction for impairment of a minor's morals cannot stand because there is no proof that he deliberately touched the private parts of a minor in a sexual or indecent manner." We do not interpret *Pickering* to stand for the proposition that a defendant violates the second prong of § 53-21 *only* if he deliberately touches a minor's private parts in a sexual or indecent manner. Rather, we interpret *Pickering* to mean that while a defendant who deliberately and improperly touches the private parts of a minor is *clearly* a hard-core violator of § 53-21, such conduct is not necessarily the only type of conduct that

is proscribed under the statute. Here, the defendant grabbed the victim's arm and lay on top of her, face to face, while holding his hand over her mouth to maintain her silence during his repeated attempts to force his tongue into her mouth. We are satisfied that these acts violated the proscriptions of § 53-21 pursuant to the *Pickering* standard.

The defendant specifically relies on *State* v. *Schriver*, supra, 207 Conn. 463–64, for the proposition that he did not have fair warning that his conduct violated § 53-21. He argues that his conduct, like that of the defendant in *Schriver*, did not consist of the deliberate touching of the private parts of a minor in a sexual and indecent manner, which is required pursuant to *Pickering*. His reliance is misplaced here because the conduct that was at issue in *Schriver* is factually distinguishable from the defendant's conduct here. Specifically, the defendant in *Schriver* approached a fully clothed minor female in public, grabbed her around her waist, and whispered a sexually suggestive remark in her ear. Id., 457. The *Schriver* court concluded that "[u]nder the *Pickering* test . . . grabbing the waist of a fully clothed minor while uttering a sexually suggestive remark is not the type of lewd conduct that § 53-21 proscribes. Accordingly, the defendant had no reasonable opportunity to know that his conduct was prohibited by the impairment of morals clause of § 53-21." Id., 466. The defendant here grabbed the victim's arm, lay on top of her, face to face, held his hand over her mouth and repeatedly attempted to force his tongue into her mouth.[7] We are persuaded that this factual scenario more closely resembles that in *Pickering* than that in *Schriver*.

---

[7] We are further persuaded that the defendant was aware of the criminal nature of his conduct by the fact that he not only hid in his mother's attic when police officers arrived at her home looking for him, but he also remained hidden despite the officers' repeated calls for him.

Having considered the defendant's conduct here within the context of prior case law on this issue, we conclude that the defendant had fair warning that his actions toward the victim violated the second prong of § 53-21. Accordingly, the defendant's vague as applied challenge to § 53-21 necessarily fails.

## II

The defendant next claims in his brief that the evidence presented at trial was insufficient to sustain the jury's verdict. Specifically, the defendant maintains that because the trial court's instructions to the jury defined the term act as it applied to both the health[8] and morals provisions of § 53-21, there was insufficient evidence presented from which a jury could find him guilty. Although we believe that the actual gravamen of this claim is that the trial court improperly instructed the jury with respect to what constitutes an act under § 53-21, we will also address the defendant's insufficiency claim.

It is well established that when we "review a challenge to the sufficiency of the evidence to support a conviction, we undertake a two part analysis. *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994); *State* v. *Wideman*, 36 Conn. App. 190, 202, 650 A.2d 571 (1994) [cert. denied, 232 Conn. 903, 653 A.2d 192 (1995)]. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative force of the evidence

---

[8] The trial court instructed the jury that the term act within the context of the health provisions of § 53-21 referred to "blatant physical abuse that endangers the child's physical well-being." The jury reasonably could have inferred from the facts that the defendant grabbed the victim's arm, fell on top of her on the floor, held his hand over her mouth and attempted to force his tongue into her mouth that the defendant's actions constituted blatant physical abuse that endangered the victim's physical well-being.

established guilt beyond a reasonable doubt. . . . *State* v. *Sivri*, supra, 126, quoting *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993) . . . ." (Internal quotation marks omitted.) *State* v. *Haggood*, 36 Conn. App. 753, 760, 653 A.2d 216, cert. denied, 233 Conn. 904, 657 A.2d 644 (1995).

The defendant argues that with respect to the morals provisions of the second prong of § 53-21 and, specifically, the committing of an act under the statute, the trial court neither defined the statutory terms "sexual and indecent manner" nor made reference to what the defendant refers to as "the *Pickering* requirement that there be a deliberate touching of the private parts of the child." At trial, evidence was presented that the defendant was lying on top of the victim while holding his hand over her mouth and repeatedly attempting to force his tongue into her mouth.

It does not strain standard notions of credulity that a jury might reasonably infer from the factual scenario in this case that the defendant's actions were done in a sexual and indecent manner. Moreover, we have already stated that *Pickering* does not stand for the proposition that a violation of the second prong of § 53-21 can result *only* from the deliberate touching of a minor's private parts, as was the factual scenario in that case. Notwithstanding, we are aware of no authority that would obligate the trial court to convey the *Pickering* standard to the jury in the course of its charge regarding § 53-21.

Accordingly, in light of those facts and the exercise of common sense, we conclude that the trial court properly instructed the jury in this case. Furthermore, there was sufficient evidence presented from which the jury reasonably could have inferred that the defendant's actions constituted conduct of a sexual and indecent nature. This claim, therefore, is without merit.

Because we have concluded that the defendant's first two claims are without merit, we need not address his final claim.

The judgments are affirmed.

In this opinion the other judges concurred.