STATE OF CONNECTICUT v. ROBERT H.[1]
(AC 20836)

Foti, Dranginis and Hennessy, Js.

---

[1] In accordance with the spirit of General Statutes § 54-86e, and to protect the victims' legitimate privacy interests, we will not use the defendant's full name in this opinion.

Argued January 10—officially released July 30, 2002

*Averum J. Sprecher*, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Dinnan*, assistant state's attorney, for the appellee (state).

DRANGINIS, J. The defendant, Robert H., appeals from the judgment of conviction, rendered after a trial to the court, of four counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21[2] and one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A).[3] On appeal, the defendant claims that (1) § 53-21 is unconstitutionally vague as applied to the facts of his case and thus failed to notify him adequately that his actions were prohibited, (2) the evidence is insufficient to sustain his conviction of risk of injury to a child in violation of § 53-21, (3) the trial court improperly precluded him from testifying on his behalf in violation of his constitutional rights, (4) the court deprived him of his constitutional right to effective assistance of counsel by refusing to permit defense counsel to withdraw during the sentencing phase of the trial and (5) the prosecutor's statements during the sentencing hearing constituted misconduct, thereby depriving the defendant of a fair trial. We reverse in part and affirm in part the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. On several occasions during

---

[2] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

[3] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

the spring of 1998, the defendant baby-sat for his two granddaughters, the victims, and one grandson, who was not his victim, when the children's mother, who is the defendant's daughter, worked in the evening. The defendant watched the grandchildren at his home and also at the home of their mother.

One evening in May, 1998, while at the defendant's home, the older victim, his ten year old granddaughter, discovered a syringe lying on the dresser in the room where she slept. The defendant entered the victim's room and lay down on her bed. When the victim questioned the defendant about the use of the syringe, he told her to put the syringe on his penis. The victim did not comply.

On another occasion, again occurring in the defendant's home, the older victim was lying face down on her bed reading a book, when the defendant approached her and lay down on top of her. The defendant, who wore clothing, proceeded to gyrate and to move his genitals along the victim's buttocks for some time. In a third incident at the defendant's home, the defendant, after taking a shower, removed his towel and exposed his genitals to his granddaughters.[4] The elder victim also testified at trial that on several occasions the defendant would "take [her] neck and push it where [the defendant's] private part was."

The defendant was subsequently arrested and charged with four counts of risk of injury to a child and sexual assault in the fourth degree. Following a trial to the court, the defendant was convicted on all counts. This appeal followed. Additional facts will be set forth where pertinent to the issues raised.

---

[4] The older victim testified that she and her sister were standing in the kitchen when the defendant entered the room, removed his towel and showed them his genitals. The other victim, the younger sister, indicated that they were in the defendant's bedroom when the incident occurred.

# I

The defendant claims that the evidence was insufficient to support his conviction for risk of injury to a child in violation of § 53-21 with respect to the charges contained in the first, fourth and fifth counts of the information.[5] We agree and reverse the defendant's conviction for risk of injury to a child as set forth in counts one, four and five of the information.

The defendant concedes that he did not preserve his claim at trial and therefore seeks to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] "Our Supreme Court, following the dictate of the United States Supreme Court in *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), has held that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. . . . Accordingly, we conclude that no practical reason exists to engage in

---

[5] The defendant first claims on appeal that General Statutes § 53-21 is unconstitutionally vague as applied to the facts of this case. This claim is directly connected to and inexorably tied to the defendant's second claim of insufficiency of the evidence. Significantly, our disposition of these two claims will necessarily mandate the exact same result. As a reviewing court, we seek to avoid unnecessary constitutional adjudication. See *State* v. *Falcon*, 68 Conn. App. 884, 886, 793 A.2d 274, cert. denied, 260 Conn. 924, 797 A.2d 521 (2002). We therefore need not address the defendant's claim that § 53-21 is unconstitutionally vague. Rather, we resolve the defendant's claim with respect to his conviction under counts one, four and five of the information on the ground of the sufficiency of the evidence.

[6] In *State* v. *Golding*, supra, 213 Conn. 239–40, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail."

a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim." (Citations omitted; internal quotation marks omitted.) *State* v. *Trotter*, 69 Conn. App. 1, 4–5, 793 A.2d 1172, cert. denied, 260 Conn. 932, 799 A.2d 297 (2002).

Our standard of review employed in sufficiency of the evidence claims is well established. "In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . Criminal convictions will be upheld only when the defendant's behavior is clearly forbidden by the statute under which he or she has been prosecuted." (Citations omitted; internal quotation marks omitted.) *State* v. *O'Neil*, 65 Conn. App. 145, 152, 782 A.2d 209, cert. granted on other grounds, 258 Conn. 932, 785 A.2d 229 (2001).

On February 2, 2000, the state filed a long form information in five counts. In counts one, four and five, the state alleged that the defendant "did an act likely to impair the health or morals of a child under the age of sixteen years, in violation of Section 53-21 (1) of the Connecticut General Statutes." The state did not specify in the information the acts that formed the basis for each charge, nor did the defendant file a motion for a bill of particulars to clarify the information. The record is clear, however, as to which alleged incidents correspond to the separate counts of the information. Count one is based on the incident in which the defendant told the older victim to put the syringe on his penis. Counts four and five of the information refer to the

situation wherein the defendant exposed himself to the two children after emerging from the shower.

The state elected to charge under the second part of § 53-21 (1), which proscribes the creation of circumstances inimical to a minor's morals or health, rather than under the first part of § 53-21 (1). As will be set forth, that charging error requires us to conclude that the evidence was insufficient to support the defendant's conviction here. Had the state charged on the first part of § 53-21 (1), this result would not have been required.

Pursuant to § 53-21, "[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or *does any act likely to impair the health or morals of any such child* . . . shall be guilty of a class C felony." (Emphasis added.) "The apparent legislative purpose in combining the two parts [of § 53-21] in a single section was to proscribe two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being. . . . The language of § 53-21 does not limit the prohibited conduct to physical touching of the minor's private parts. [W]hile a defendant who deliberately and improperly touches the private parts of a minor is clearly a hard-core violator of § 53-21, such conduct is not necessarily the only type of conduct that is proscribed under the statute." (Citation omitted; internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 159, 778 A.2d 955 (2001).

To sustain a conviction under the first part of § 53-21 (1), which prohibits a person from causing or permit-

ting a child to be placed in a situation likely to endanger the life or limb of such child or to injure the health or impair the morals of such child, "it is not necessary, nor have the courts required, that a defendant touch any part of the victim's body . . . . Rather, the creation of a prohibited situation is sufficient to breach the statute." *State* v. *Erzen*, 29 Conn. App. 591, 594–95, 617 A.2d 177 (1992). Conversely, to find a defendant guilty of violating the second part of § 53-21 (1), the state must prove beyond a reasonable doubt that the defendant committed an act "directly perpetrated on the person of the minor and injurious to his moral or physical well-being." *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963); see *State* v. *Schriver*, 207 Conn. 456, 467, 542 A.2d 686 (1988). Essential to the second part of § 53-21 (1), and the factor distinguishing that part from the first clause of subdivision (1), is that the defendant must have engaged in an act upon the person of the victim. *State* v. *Erzen*, supra, 596. "All that is absolutely known is that the irreducible minimum of any prosecution under the second part of § 53-21 is an act directly perpetrated on the person of a minor." *State* v. *Schriver*, supra, 467.

The state alleged in counts one, four and five of the information that the defendant had committed "act[s] likely to impair the health or morals of a child under the age of sixteen years, in violation of Section 53-21 (1)," when he told the child to put the syringe on his penis and exposed himself to both girls. The defendant now contends that the evidence was insufficient to sustain his conviction of counts one, four and five because he did not directly perpetrate any acts on the persons of the victims. We agree.

The basis of the allegations contained in counts one, four and five of the information did not involve acts directly perpetrated on the persons of the minors. Rather, they constituted, with respect to the first count,

a vulgar and graphic statement, and as contained in the fourth and fifth counts, the defendant's indecent exposure. The state failed to allege in those counts that the defendant committed any physical act directly on the persons of the victims.

The state contends that recent case law has "broadened the scope of the 'act' prong by eliminating any requirement as to touching of intimate parts or that acts be 'directly perpetrated on the person' of a minor." Although we agree with the state that the second part § 53-21 (1) does not limit the prohibited conduct to the physical touching of a minor's private parts, we are unpersuaded by the state's assertion that case law has diminished the requirement that an act be directly committed on the person of the victim. We first note that the state fails to provide any case law that supports its proposition. Rather, the state relies on cases involving constitutional challenges to the first prong of § 53-21 (1), none of which stands for the notion that an act need not be directly perpetrated on the person of the victim to support a conviction under the second prong of § 53-21 (1).[7] The few cases implicating the second prong of § 53-21 (1) that the state cites in its brief all explicitly provide that to sustain a conviction under that part of the statute, the defendant must have committed an act directly on the person of the minor.[8] Accordingly, we cannot find any merit to the state's assertion.

---

[7] The state relies on cases such as State v. Erzen, supra, 29 Conn. App. 591, and State v. Tirado, 21 Conn. App. 449, 574 A.2d 252, cert. denied, 215 Conn. 816, 576 A.2d 546 (1990), both of which involve constitutional challenges to the first prong of General Statutes § 53-21 and do not stand for the notion that the act need not be directly perpetrated on the person of the victim to support a conviction under the second prong of § 53-21.

[8] For example, the state cites to State v. Tucker, 50 Conn. App. 506, 718 A.2d 979 (1998), appeal dismissed, 248 Conn. 668, 728 A.2d 1097 (1999), which explicitly provides that to sustain a conviction under the second prong of the statute, the defendant must have committed an act directly on the person of the minor.

We are constrained to conclude that with respect to counts one, four and five, the evidence was insufficient to support the defendant's conviction for risk of injury to a child in violation of the "act" clause of § 53-21 (1) as set forth in counts one, four and five of the information. Although the conduct of this grandfather was clearly debasing and an assault on the morals of his granddaughters, the defendant's actions in this case were not perpetrated directly on the persons of the victims. Current case law requires a finding that the evidence was insufficient in this case. See *State* v. *Burton*, supra, 258 Conn. 153; *State* v. *Tucker*, 50 Conn. App. 506, 718 A.2d 979 (1998), appeal dismissed, 248 Conn. 668, 728 A.2d 1097 (1999).

## II

We next address the defendant's claim that the court deprived him of his federal[9] and state[10] constitutional rights to testify on his behalf when it ruled that he had waived that right.[11] We are not persuaded.

The following additional facts are pertinent to our resolution of the defendant's claim. On the second day of the three day trial, defense counsel informed the court that the defendant had asked him to withdraw from the case.[12] Noting that the parties were midway

---

[9] The defendant invokes his right to testify on his behalf pursuant to the fifth, sixth and fourteenth amendments to the United States constitution.

[10] The defendant cites to article first, § 8, of the Connecticut constitution.

[11] We address the claim solely on federal constitutional grounds because the defendant failed to separately and independently brief his state constitutional claim. See *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

[12] The following colloquy occurred wherein the defendant requested that the court appoint alternate counsel:

"The Defendant: This wasn't suddenly. I had written him a letter a couple of weeks ago and I asked for certain information on the stuff that I don't want to embarrass him, and I had a right that I don't get what I need, I will take him to the bar association in East Hartford.

"The Court: So, you are requesting that I grant your motion because counsel has not provided something to you that you think you need.

"The Defendant: Right.

"The Court: Is that the reason?

through the trial, the court questioned the defendant about why he wanted a new attorney. The defendant explained that he desired new counsel because his current defense counsel had failed to provide him with certain information that he had requested. The court then heard from defense counsel, who stated that he had met with the defendant approximately twenty-eight times, and had complied with every one of the defendant's requests for information and could substantiate his assertions. The court concluded that "[b]ased on the representations that have been made to me by [the defendant], I cannot find that there is good cause to grant your motion, nor can I find that there are any exceptional circumstances which would lead me to believe that this is a motion that should be granted. Therefore, I am denying your motion."[13]

"The Defendant: Right.

"The Court: Would you like to be heard on this . . . ?

"[Defense Counsel]: Yes, Your Honor. [The defendant] and I have met approximately twenty-eight times. I did go to see him down in Bridgeport. Unfortunately, I was unable to see him at that time. I did receive his correspondence, and throughout this case I've sent him numerous copies of things. As a matter of fact, just last week or the week before, I gave him copies of everything again. I think I've given him everything he has requested in multiple copies.

"The Court: Okay. Is there anything—

"[Defense Counsel]: And I have documented that in correspondence. Obviously, I can't show that correspondence to the court because it pertains to attorney-client information and, there as well, [the defendant] is certainly free to pursue what avenue he wishes to pursue, but I believe I've provided everything I have been required to provide, and I believe my office staff can verify that because they sent multiple copies on my behalf as well.

"The Court: Okay. . . . [I]s there anything that you want to add?

"The Defendant: No. That's it, Your Honor. . . .

"The Court: Okay. Based on the representations that have been made to me by [the defendant], I cannot find that there is good cause to grant your motion, nor can I find that there are any exceptional circumstances which would lead me to believe that this is a motion that should be granted. Therefore, I am denying your motion."

[13] The defendant does not claim on appeal that the court abused its discretion in denying his motion for alternate counsel at that juncture of the trial, nor does he claim in any other manner that the court improperly denied that particular motion.

At the close of the defense case, defense counsel requested a ten minute recess to speak with the defendant about taking the witness stand to testify. After the recess, defense counsel informed the court that he had attempted to ascertain from the defendant whether he desired to testify, but that the defendant had refused to discuss the matter with him. Accordingly, defense counsel stated that he was "at a loss to tell the court whether or not I am resting or not until I have an idea what [the defendant's] desires are."

The court then asked the defendant whether he understood that he possessed the right to testify on his behalf and whether he wanted to exercise that right. The defendant responded that he wanted his own attorney and wanted to "explain what is behind this, not just yes or no." The defendant declined to answer definitively whether he wanted to testify, but rather continued to request different counsel. Reminding the defendant that counsel represented him and that his motion for new counsel had been denied, the court ultimately gave the defendant the option either to proceed with his defense attorney and to testify on his behalf or to waive his right to testify. When the defendant again failed to indicate his intent, the court found that he had waived his right to testify on his behalf.[14]

---

[14] The following colloquy occurred, which now forms the basis of the defendant's claim that he did not waive his right to testify on his behalf:

"The Court: Okay. . . . [Y]ou understand it is your right to testify in your own behalf.

"The Defendant: Now, he says he come down to see me twenty-eight times.

"The Court: All I need is a yes or no, sir.

"The Defendant: No. I want to explain what is behind this, not just yes or no.

"The Court: All I'm dealing with is your desire or wish to testify—

"The Defendant: He hasn't come—

"The Court: . . . [Y]ou will either answer to me yes or no, or I'm going to hold you in contempt.

"The Defendant: I already told you that I want my own attorney.

"The Court: Does that mean you're waiving the right to testify on your own behalf?

"The Defendant: No. I didn't quite say that. I said I needed my own attorney.

"The Court: You have an attorney, sir. We're going to proceed with your attorney. You'll either choose to testify or waive your right to testify. You do have the right to testify on your own behalf.

"The Defendant: I also—I also have right to have my own attorney.

"The Court: . . . [Y]ou also have an attorney. I've denied your motion for alternate counsel.

"The Defendant: I don't have an attorney.

"The Court: All right. So, I take it that you are waiving your right to testify?

"The Defendant: I'm not waiving my right. I already explained that.

"The Court: Well, you have an opportunity at this point—

"The Defendant: When I get my attorney, I'll give you—I'll let you know—sorry.

"The Court: . . . [E]ither your client is going to testify now or do you have any further witnesses?

"[Defense Counsel]: I have no further witnesses, Your Honor. . . .

"The Court: Is there any evidence that you want to submit? . . .

"[Defense Counsel]: I have no further witnesses, Your Honor, absent [the defendant]. . . .

"The Court: Okay. Well, [the defendant] has not indicated to this court that he will be testifying on his behalf. Therefore, do you have anything else?

"The Defendant: I'm not waiving it. He hasn't brought in the medical reports that would help me in this case. Why isn't he bring this stuff in for me?

"The Court: Do you know the deal . . . ? You know the process. I denied your motion. We're going on.

"The Defendant: I'm asking why he's not bringing in—

"The Court: This is out of order.

"The Defendant:—the stuff that would help me in this case.

"The Court: This is out of order. I'm going to give you one opportunity and that is to go with the process. If your client is not going to testify in his own behalf, are you going to be resting?

"[Defense Counsel]: If he chooses not to testify, I will rest, Your Honor. I don't think he has made indications to the court, unfortunately, whether or not he wishes to testify.

"The Court: Well, he indicates on the one hand that he wants to testify and on the other that he wants to testify with another lawyer. You are his lawyer. If he wants to testify with you as his lawyer, now is the opportunity to do that. If he does not want to testify with you as his lawyer, the court deems that as a waiver of his right to testify on his behalf. Those are his two options. He only has two. [The defendant] has indicated quite clearly for the record he does not want to testify with you as his lawyer.

"The Defendant: Why do you keep saying that? I says, I'll have my own lawyer, I want to testify. He's not bringing stuff in that I need. Why isn't he bringing the evidence in which was given to him in August of 1998? . . .

"The Court: Okay. As I indicated before we took a recess, there are two options . . . . I have already denied his motion for alternate counsel, and

The defendant now contends that the court improperly found that he had waived his right to testify on his behalf. As the defendant did not raise that issue during the trial, he seeks review of his claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.[15] See footnote 6. A claim brought pursuant to *Golding* cannot succeed if the defendant fails to satisfy all four of *Golding*'s prongs. Id. "The appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Solman*, 67 Conn. App. 235, 238, 786 A.2d 1184 (2001), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002). Although the defendant's claim satisfies *Golding*'s first two prongs, we conclude that he cannot prevail because his claim fails to meet the third prong, namely, that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. See footnote 6.

"The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that are essential to due process of law in a fair adversary process. . . . The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony . . . . The right to testify is also found in the Compulsory Process Clause of the Sixth

therefore the options are, one, he either chooses to exercise his right to testify with [his current attorney] as his counsel or he chooses not to exercise his right to testify with [his current attorney] as counsel. Having failed to indicate that he will testify on his behalf with [his current attorney] as counsel, this court deems the defendant to have waived his right to testify."

[15] The defendant alternatively claims that he properly preserved his claim for appellate review. We disagree. At the conclusion of the trial, the defendant sought a mistrial. That motion, however, was general in nature and did not specifically state that he sought a new trial because the court prevented him from testifying on his behalf. Therefore, we review the defendant's unpreserved claim under the standard set forth in *Golding*.

Amendment, which grants a defendant the right to call witnesses in his favor, . . . . Logically included . . . is a right to testify himself. . . . The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony. . . . A defendant's right to testify is also protected by his rights to a fair trial, to due process, to present a defense, and to be free from compelled testimony under article XVII of the amendments to the Connecticut constitution and under article first, § 8, of the Connecticut constitution." (Citations omitted; internal quotation marks omitted.) *State* v. *Shinn*, 47 Conn. App. 401, 410, 704 A.2d 816 (1997), cert. denied, 244 Conn. 913, 914, 713 A.2d 832, 833 (1998).

"Although a defendant has the right to testify on his or her behalf, that privilege is not triggered unless he or she takes some affirmative action regarding his right to testify. . . . The accused must act affirmatively. While the due process clause of the Fifth Amendment may be understood to grant the accused the right to testify, the if and when of whether the accused will testify is primarily a matter of trial strategy to be decided between the defendant and his attorney." (Citations omitted; internal quotation marks omitted.) *State* v. *Hobson*, 68 Conn. App. 40, 45, 789 A.2d 557, cert. denied, 260 Conn. 910, 796 A.2d 557 (2002). Accordingly, to resolve the issue, we must determine whether, under the circumstances of this case, the defendant's actions constituted an affirmative invocation of his right to testify on his behalf, or in the alternative, a waiver of that right. See *State* v. *Jennings*, 20 Conn. App. 721, 725, 570 A.2d 234, cert. denied, 215 Conn. 801, 574 A.2d 218 (1990).

After thoroughly reviewing the transcript of the proceeding, we conclude that the court properly ruled that the defendant had waived his right to testify on his behalf. When asked by the court whether he wanted to

testify, the defendant avoided answering the question. The defendant ambiguously stated, in essence, "I want my own attorney," and, "When I get my attorney, I'll give you—I'll let you know . . . ." After attempting several times to elicit a direct answer from the defendant, the court ultimately concluded that he had waived his right to testify on his behalf.

This court and our Supreme Court have held on numerous occasions that "the right to counsel cannot be . . . manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." (Internal quotation marks omitted.) *State* v. *Beaulieu*, 164 Conn. 620, 627–28, 325 A.2d 263 (1973). Particularly, the right to counsel may not be abused as a means to impede the judicial process and to delay a trial. Id., 628. "While a criminal defendant's right to be represented by counsel implies a degree of freedom to be represented by counsel of [the] defendant's choice . . . this guarantee does not grant a defendant an unlimited opportunity to obtain alternative counsel [in the midst] of trial. . . . A court need not permit the replacement of counsel upon a defendant's mere whimsical demand and certainly not where it is evident that a professed disenchantment with his lawyer is a subterfuge to secure an unwarranted delay in the trial." (Internal quotation marks omitted.) *State* v. *Rosado*, 52 Conn. App. 408, 429, 726 A.2d 1177 (1999).

In this case, the defendant conditioned his answer to whether he wanted to testify on his behalf upon receiving a new trial attorney. On the previous day, the defendant had sought the appointment of new defense counsel because of his trial attorney's alleged failure to provide "something" to him. After hearing from the defendant and defense counsel, the court ruled that neither good cause nor exceptional circumstances existed to warrant the appointment of a new defense attorney.

We conclude that the defendant's insistence on obtaining new counsel before answering whether he wanted to testify on his behalf did not constitute an affirmative invocation of his right to testify. The court repeatedly reminded the defendant that it had denied his motion for alternate counsel and that he was not entitled to receive a new attorney. As previously stated, a court is not required to dismiss an assigned attorney on a defendant's "mere whimsical demand and certainly not where it is evident that a professed disenchantment with his lawyer is a subterfuge to secure an unwarranted delay in the trial." (Internal quotation marks omitted.) *State* v. *Beaulieu*, supra, 164 Conn. 629. Although the defendant possessed the right to testify on his behalf, he did not have the right to condition the invocation of that privilege on the appointment of new trial counsel.

A defendant may not use his right to counsel as a tactic to thwart or manipulate the judicial process. Here, the defendant knew that the court had denied his motion for new counsel, yet refused to proceed unless he received alternate defense counsel. As the court ruled that the defendant was not entitled to new counsel, it was proper for the court to find that he had waived his right to testify on his behalf when he demanded a new attorney before indicating his intent as to whether to testify.

Given those circumstances, we conclude that the defendant failed to invoke affirmatively his right to testify on his behalf, and, accordingly, the court properly found that he had waived his right to testify. Therefore, the defendant cannot establish that a constitutional violation clearly existed and clearly deprived him of a fair trial. Accordingly, he has failed to satisfy the third prong of *Golding* and, thus, cannot prevail on his claim. See footnote 6.

The defendant raises two additional unpreserved issues that arise out of his claim that he invoked his

right to testify on his behalf. First, the defendant contends that the court deprived him of his constitutional rights as set forth in the sixth amendment to the United States constitution when it failed to canvass him and defense counsel sua sponte after he had expressed his dissatisfaction with counsel's representation.[16] We conclude that his claim has no merit.

"[A] trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . . The extent of that inquiry, however, lies within the discretion of the trial court. . . . A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints." (Citations omitted; internal quotation marks omitted.) *State* v. *Marsala*, 59 Conn. App. 135, 144–45, 755 A.2d 965, cert. denied, 254 Conn. 948, 762 A.2d 905 (2000). Moreover, a defendant does not possess the right to demand the appointment of alternate counsel simply on the ground of a breakdown of communication, which the defendant induced. *State* v. *Gethers*, 193 Conn. 526, 545, 480 A.2d 435 (1984). Our Supreme Court has warned that "[j]udges must be vigilant that requests for appointment of a new attorney [in the midst] of trial should not become a vehicle for achieving delay." (Internal quotation marks omitted.) *State* v. *Beaulieu*, supra, 164 Conn. 628.

As previously noted, the court heard the defendant on his motion for new counsel the day before he was asked whether he wanted to testify. In refusing to indicate whether he would testify on his behalf, the defendant invoked the same complaints that he had raised before the court on the previous day, namely, the failure

[16] We again review the defendant's claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 6. We note that the defendant's claim satisfies the first two prongs of *Golding*, but we conclude that it does not meet its third prong and, thus, the claim fails.

of defense counsel to provide him with or to obtain certain documents. "[A] trial judge's failure to inquire into the defendant's request for new counsel where the defendant has already made known the reasons for his request is not error." (Internal quotation marks omitted.) *State* v. *High*, 12 Conn. App. 685, 688, 533 A.2d 1217 (1987), cert. denied, 207 Conn. 801, 540 A.2d 74 (1988). Given that the defendant already had alerted the court to his problems with his defense counsel and that the court had heard from the defendant, we conclude that the court was not required to canvass the defendant and defense counsel sua sponte. We decline to impose any such burden on the trial court. Accordingly, the defendant cannot establish that a constitutional violation clearly existed and, thus, his claim fails.

The defendant additionally claims that the court committed plain error; see Practice Book § 60-5; when it limited his choices either to testify on his behalf with his appointed counsel representing him or to waive his right to testify. On the basis of our previous determinations, we conclude that the court did not commit plain error.

### III

The defendant next claims that the court abused its discretion and thereby deprived him of his federal and state constitutional rights to effective assistance of counsel by refusing to permit defense counsel to withdraw during the sentencing phase of the trial. We are not persuaded.

The defendant concedes that his claim is unpreserved and again seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 6. Although the defendant's claim meets *Golding*'s first two prongs, we conclude that his claim fails because he cannot satisfy the third prong of *Golding* by establishing that a consti-

tutional violation clearly exists that clearly deprived him of a fair trial.

The following additional facts are pertinent to our resolution of the defendant's claim. After the court accepted the jury's guilty verdict but prior to the sentencing hearing, defense counsel filed a motion to withdraw pursuant to Practice Book § 3-10 on the grounds that not only had the defendant requested him to resign, but that the defendant refused to communicate with him, thereby eroding the attorney-client relationship. The court denied defense counsel's motion.

At the sentencing hearing, the court reminded the defendant that his trial counsel continued to represent him and that it had denied counsel's motion to withdraw. The defendant replied that he had hired another attorney, but that the attorney was at trial for another case. Defense counsel then reiterated that he wanted to withdraw because the defendant refused to cooperate with him. Opposing the motion to withdraw, the prosecutor stated that the defendant had received adequate representation and that the defendant had refused to speak with a probation officer in an effort "to [prevent the] process from being carried out . . . ."

After the state was heard on the matter, the court again denied defense counsel's motion, stating: "Okay. This was an issue that was brought up by the defendant on the eve of trial, and I denied the motion at that time and I'm denying the motion to withdraw at this point as well. There's no new evidence to persuade me that we should not go forward with the sentencing today . . . ."

Under both the federal and state constitutions, a defendant possesses the due process right to assistance of counsel during a sentencing hearing. *State* v. *Williams*, 199 Conn. 30, 45, 505 A.2d 699 (1986). "[T]he sentencing process is a critical stage of a criminal trial."

(Internal quotation marks omitted.) *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 144, 712 A.2d 947 (1998).

"We have recognized that, as an adjunct to the right to the assistance of counsel, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest. . . . Our courts are not, however, constitutionally required to comply with a demand for the appointment of replacement counsel on the basis of a purported conflict that arises from the unreasonable conduct of the accused himself." (Citation omitted; internal quotation marks omitted.) *Douglas* v. *Warden*, 218 Conn. 778, 789, 591 A.2d 399 (1991). "Although under some circumstances a complete breakdown in communication between a defendant and his counsel may warrant appointment of new counsel . . . a defendant is not entitled to demand a reassignment of counsel simply on the basis of a breakdown in communication which he himself induced." (Citation omitted; internal quotation marks omitted.) *Sekou* v. *Warden*, 216 Conn. 678, 688, 583 A.2d 1277 (1990).

The court possesses broad discretion in determining whether the circumstances warrant the appointment of new counsel. *State* v. *Casado*, 42 Conn. App. 371, 379, 680 A.2d 981, cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996). "[A]bsent a factual record revealing an abuse of that discretion, the court's failure to allow new counsel is not reversible error." (Internal quotation marks omitted.) Id.

We conclude that the court properly exercised its broad discretion in refusing to appoint new counsel during the sentencing hearing. As previously stated, during the trial, the court heard from the defendant regarding his dissatisfaction with defense counsel and found that the defendant had failed to demonstrate good cause or to show exceptional circumstances justifying

the appointment of new counsel. In denying the motion to withdraw at the sentencing hearing, the court found that no new evidence had been presented to warrant the replacement of defense counsel.

We reiterate that a court is not required to appoint new counsel based on the lack, or erosion of, an attorney-client relationship when the defendant alone caused the breakdown in communication. The record amply demonstrates that the court acted well within its discretion in denying defense counsel's motion to withdraw. Therefore, the defendant cannot establish that a constitutional violation clearly exists, as provided in the third prong of *Golding*. Accordingly, the defendant cannot prevail on his claim.[17]

## IV

The defendant finally contends that the comments of the prosecutor during the sentencing hearing prejudicially influenced the court in arriving at the sentence in violation of the defendant's due process rights as set forth in the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[18] Moreover, the defendant argues that the prosecutor's comments during the sentencing hearing

[17] The defendant additionally asserts that when he stated to the court that he had obtained another attorney to represent him, the court had a duty sua sponte to inquire about that alternate counsel. That claim is without merit. No new appearance was filed, and the court had no evidence before it to determine that the defendant had retained new counsel.

To the extent that the defendant also claims that the court failed to grant him a continuance until his newly retained counsel was available, we find that claim to be without merit. Given our conclusion that the court properly refused to appoint alternate counsel, the defendant was not entitled to a continuance on the ground that he invoked.

[18] The defendant claims that the prosecutor's statements deprived him of his constitutional rights as set forth in the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. We again restrict our review of the claimed violation to analysis under the federal constitution due to the defendant's failure to provide an independent state constitutional analysis. See footnote 11.

constituted prosecutorial misconduct. We are not persuaded.

In support of his claim, the defendant refers to several of the prosecutor's comments made during the sentencing hearing. The defendant cites the prosecutor's statements that "this defendant represents evil," that the presentence investigation report was the most disturbing that he had ever seen, that this case involved a lot of "firsts" in his career, that the court should impose the maximum sentence, that the defendant is one of a "relatively small minority . . . of people in our society that has to be warehoused, period, and never have access to people again," that the defendant should spend the rest of his life incarcerated and that the presentence report contained "stomach turning" perverse photographs that the defendant had taken of his daughter. The defendant also claims that the prosecutor went into detail about the presentence report because of the prosecutor's assertion that the defendant is evil.

The defendant again concedes that his claim is unpreserved and thus seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 6. Although the defendant's claim satisfies the first two prongs of *Golding*, he cannot prevail because he cannot establish that a constitutional violation clearly exists so as to satisfy *Golding*'s third prong.

We note from the outset that the defendant does not claim that his sentence was illegal or in violation of statutory guidelines.[19] Rather, the defendant contends

---

[19] We further note that the defendant's claim is of an unusual nature. Predominantly, claims involving prosecutorial misconduct relate to statements or behavior that occurred during the actual trial. Under those circumstances, "[a]n unpreserved prosecutorial misconduct claim is not reviewable if the claimed misconduct consisted of isolated and brief episodes, did not reveal a pattern of conduct repeated throughout the trial, or conduct that was not blatantly egregious." *State* v. *Henry*, 27 Conn. App. 520, 529, 608 A.2d 696 (1992). Here, the defendant does not contend that the prosecutor's conduct deprived him of a fair trial, but rather that the prosecutor's com-

that the prosecutor's comments prejudicially influenced the court in arriving at its sentencing decision.

In reviewing a sentence that is within the statutory limits, we start with the basic premise that "[a]s long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986). "[W]e have no discretionary power to modify or overturn a sentence that was within the limits fixed by statute for the offense charged, except where a trial court appears to have abused its discretion. . . . Abuse of discretion, however, means more than that the defendant's sentence was too severe. . . . Where the trial court has properly considered all of the offenses proved and imposed a sentence within the applicable statutory limitations, there is no abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Connelly*, 46 Conn. App. 486, 504, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998).

"We have . . . stated that if a sentence is within statutory limits it is not generally subject to modification by a reviewing court. . . . A sentencing judge has very broad discretion in imposing any sentence within the statutory limits . . . . The court may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come. . . . Due process requires, however, that information be considered only if it has some minimal indicium of reliability. . . .

ments denied him his right to a fair sentence. Because the claim arises in the context of the sentencing hearing, rather than the actual criminal trial, our analysis will differ from that generally applied to unpreserved claims of prosecutorial misconduct. Specifically, we review the claim to determine whether the defendant's sentence was fair.

A court should refrain from comments that find no basis in the record. Nonetheless, the mere reference to information outside of the record does not require a sentence to be set aside unless the defendant shows: (1) that the information was materially false or unreliable; and (2) that the trial court substantially relied on the information in determining the sentence." (Internal quotation marks omitted.) Id., 505.

After thoroughly examining the sentencing proceedings, we conclude that the court properly considered only information that met the test of reliability, and that it had a reasonable and persuasive basis for relying on that information in fashioning the sentence. The transcript fails to reveal that the prosecutor's comments were in any way prejudicial relative to the court's determination of the defendant's sentence. Particularly, the transcript does not reflect that the court relied on the comments of the prosecutor any more than it relied on the statements made by the defendant, defense counsel or any other speaker. That is further borne out by the fact that the court sentenced the defendant to twenty-five years of incarceration despite the prosecutor's urging that the court sentence the defendant to the maximum forty-one years. We therefore conclude that the defendant's claim fails because he cannot establish that the alleged constitutional violation clearly exists.

The judgment is reversed only as to the conviction of risk of injury to a child under counts one, four and five of the information and the case is remanded with direction to render judgment of not guilty on those charges.

In this opinion the other judges concurred.