STATE OF CONNECTICUT *v.* ROBERT H.
(SC 16873)

Sullivan, C. J., and Borden, Norcott, Vertefeuille and Zarella, Js.

Argued September 10, 2004—officially released March 8, 2005

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James R. Dinnan*, senior assistant state's attorney, for the appellant (state).

*Averum J. Sprecher*, for the appellee (defendant).

*Opinion*

ZARELLA, J. The state appeals, following our grant of certification, from the judgment of the Appellate Court reversing the defendant's conviction on three counts of risk of injury to a child in connection with the defendant's sexual misconduct toward his two granddaughters. The state claims that the Appellate Court improperly: (1) concluded that the evidence was insufficient to support the defendant's conviction on those three counts because it did not establish that the defendant physically had touched the person of each victim; (2) disregarded evidence in the record that would have supported that court's affirmance of the defendant's conviction on one of those three counts; and (3) applied a sufficiency of evidence analysis to resolve the defendant's claim on appeal when it should have analyzed that claim under charging and notice principles. We affirm the judgment of the Appellate Court.

The defendant, Robert H.,[1] was charged in a five count information with three counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (1),[2] one count of risk of injury to a child in violation of § 53-21 (2)[3] and one count of sexual assault in the fourth degree in violation of General Statutes (Rev. to 1997) § 53a-73a (a) (1) (A). The defendant was convicted on all counts after a trial to the court and sentenced to a term of twenty-five years imprisonment. On appeal to the Appellate Court, the defendant claimed, inter alia,[4] that the evidence was insufficient to support

[1] In accordance with General Statutes § 54-86e and our policy of protecting the privacy interests of victims of sexual abuse, we decline to identify the victims or others through whom the victims' identities may be ascertained.

[2] General Statutes (Rev. to 1997) § 53-21 provides: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, shall be guilty of a class C felony."

Although General Statutes (Rev. to 1997) § 53-21 was amended in 1997; see Public Acts 1997, No. 97-147, § 1 (adding subdivision [3] classifying purchase or sale of child, except in connection with legitimate adoption proceeding, as risk of injury); that amendment has no bearing on the merits of this appeal. For the sake of simplicity, we cite to the 1997 revision of § 53-21 as the statute under which the defendant was charged and convicted. All references to § 53-21 throughout this opinion are to the 1997 revision unless otherwise noted.

[3] See footnote 2 of this opinion.

[4] On appeal to the Appellate Court, the defendant claimed that: "(1) § 53-21 [was] unconstitutionally vague as applied to the facts of his case and thus failed to notify him adequately that his actions were prohibited, (2) the evidence [was] insufficient to sustain his conviction of risk of injury to a child in violation of § 53-21 [1], (3) the trial court improperly precluded him from testifying on his behalf in violation of his constitutional rights, (4) the court deprived him of his constitutional right to effective assistance of counsel by refusing to permit defense counsel to withdraw during the sentencing phase of the trial and (5) the prosecutor's statements during the sentencing hearing constituted misconduct, thereby depriving the defendant of a fair trial." *State* v. *Robert H.*, 71 Conn. App. 289, 291, 802 A.2d 152 (2002).

his conviction on the three counts of risk of injury to a child with which he had been charged under § 53-21 (1). *State* v. *Robert H.*, 71 Conn. App. 289, 291, 802 A.2d 152 (2002). Specifically, the defendant contended that the acts that formed the bases for these counts did not involve a physical touching of the victims. Id., 296; see, e.g., *State* v. *Schriver*, 207 Conn. 456, 465–66, 542 A.2d 686 (1988). The Appellate Court reversed the defendant's conviction on the three counts and directed the trial court to render judgment of not guilty on those counts. Id., 313. This certified appeal followed.[5]

The opinion of the Appellate Court sets forth the following relevant facts that the trial court reasonably could have found. "On several occasions during the spring of 1998, the defendant [babysat] for his two granddaughters, [F and B] the victims . . . when [their] mother, who is the defendant's daughter, worked in the evening. The defendant watched [F and B] at his home and also at the home of their mother.

"One evening in May, 1998, while at the defendant's home, [F] the older victim . . . discovered a syringe [in a] dresser in the room where she slept. The defendant entered [F's] room and lay down on her bed. When [F] questioned the defendant about the use of the syringe, he told her to put the syringe on his penis. [F] did not comply.

"On another occasion, again occurring in the defendant's home, [F] was lying face down on her bed reading a book, when the defendant approached her and lay down on top of her. The defendant, who wore clothing, proceeded to gyrate and to move his genitals along

Only the second issue is before this court on appeal from the judgment of the Appellate Court.

[5] We granted the state's petition for certification to appeal, limited to the issue of whether the Appellate Court properly had concluded that the defendant's conviction on three counts of risk of injury to a child under § 53-21 (1) must be reversed because of evidentiary insufficiency. *State* v. *Robert H.*, 262 Conn. 913, 811 A.2d 1294 (2002).

[F's] buttocks for some time. In a third incident at the defendant's home, the defendant, after taking a shower, removed his towel and exposed his genitals to [F and B]. [F] also testified at trial that on several occasions the defendant would 'take [her] neck and push it where [the defendant's] private part was.' " *State* v. *Robert H.*, supra 71 Conn. App. 291–92.

The defendant was charged with four counts of risk of injury to a child and one count of sexual assault in the fourth degree. The state filed a long form information in which it alleged, in counts one, four and five, that the defendant "did an act likely to impair the health or morals of a child under the age of sixteen years, in violation of [§] 53-21 (1) . . . ." In count two, the state alleged that the defendant "had contact with the intimate parts of a child under the age of sixteen years in a sexual and indecent manner likely to impair the health or morals of such child, in violation of [§] 53-21 (2) . . . ." Finally, in count three, the state alleged that the defendant "intentionally subject[ed] another person, who was under the age of fifteen years, to sexual contact in violation of [§] 53a-73a [a] (1) (A) . . . ." The information did not set forth the specific acts that corresponded to each count, and the defendant did not request a bill of particulars. At the conclusion of the state's case-in-chief, however, defense counsel moved for judgment of acquittal, and, in conjunction with the argument on that motion, the assistant state's attorney articulated the evidentiary bases for each of the five counts. He represented to the court that count one was based on the defendant's request that F put the syringe on his penis, counts two and three were based on the defendant's act of lying on top of F and gyrating against her buttocks,[6] and counts four and five were based on the

---

[6] The defendant's conviction on counts two and three are not at issue in this appeal.

incident in which the defendant exposed his genitals to F and B after he had emerged from the shower.

Following a trial to the court, the defendant was convicted on all counts. On appeal to the Appellate Court, the defendant argued, inter alia, that § 53-21 (1) was unconstitutionally vague as applied to the facts of his case and that the evidence was insufficient to support his conviction on the three counts of risk of injury to a child under § 53-21 (1). *State* v. *Robert H.*, supra, 71 Conn. App. 291. He contended that this court's judicial gloss on § 53-21; see, e.g., *State* v. *Schriver*, supra, 207 Conn. 465–66; makes clear that a violation of the "act" prong of § 53-21 (1) must involve a physical touching of the victim's person.[7] *State* v. *Robert H.*, supra, 296.

The Appellate Court reversed the defendant's conviction on counts one, four and five on the ground of evidentiary insufficiency. Id., 298, 313. In reaching that result, the court noted that § 53-21 (1) contains two distinct parts, each of which requires a different evidentiary showing. Id., 295–96. The court explained: "To sustain a conviction under the first part of § 53-21 (1), which prohibits a person from causing or permitting a child to be placed in a situation likely to endanger the life or limb of such child or to injure the health or impair the morals of such child, 'it is not necessary, nor have the courts required, that a defendant touch any part of the victim's body . . . . Rather, the creation of a prohibited situation is sufficient to breach the statute.' *State* v. *Erzen*, 29 Conn. App. 591, 594–95, 617 A.2d 177 (1992). Conversely, to find a defendant guilty of

---

[7] The Appellate Court noted that the defendant's vagueness claim was inextricably tied to his claim of evidentiary insufficiency and that its disposition of those two claims would necessarily mandate the same result. *State* v. *Robert H.*, supra, 71 Conn. App. 293 n.5. The Appellate Court did not reach the vagueness claim, however, because it interpreted § 53-21 (1) to require a physical touching of the victim's person and reversed the defendant's conviction on counts one, four and five on the basis of evidentiary insufficiency. See id., 298, 313.

violating the second part of § 53-21 (1), the state must prove beyond a reasonable doubt that the defendant committed an act 'directly perpetrated on the person of the minor and injurious to his [or her] moral or physical well-being.' *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963); see *State* v. *Schriver*, [supra, 207 Conn. 467]. Essential to the second part of § 53-21 (1), and the factor distinguishing that part from the first clause of subdivision (1), is that the defendant must have engaged in an act upon the person of the victim. *State* v. *Erzen*, supra, 596." *State* v. *Robert H.*, supra, 295–96.

Upon application of the foregoing principles, the Appellate Court determined that the defendant's act of asking F to place a syringe on his penis and his act of exposing himself to F and B after exiting the shower were not "acts directly perpetrated on the persons of the [victims]" within the meaning of the second part of § 53-21 (1). Id., 296. "Rather, they constituted, with respect to the first count, a vulgar and graphic statement, and [with respect to] the fourth and fifth counts, the defendant's indecent exposure." Id., 296–97. The Appellate Court further determined that, because "[t]he state [had] failed to allege in those counts that the defendant [had] committed any physical act directly on the persons of the victims," it was bound by case law to conclude that the evidence was insufficient to support the defendant's conviction on counts one, four and five. Id., 298. The Appellate Court observed, however, that if the state had brought its charges under the "situation" prong of § 53-21 (1), which does not require a physical touching of the victim's person, "this result would not have been required." Id., 295. This certified appeal followed.

I

The state first claims that the Appellate Court improperly concluded that the evidence was insufficient to

support the defendant's conviction on counts one, four and five on the ground that a physical touching of the victim's person is a necessary element of the offense proscribed under the "act" prong of § 53-21 (1). The state contends that recent jurisprudence has broadened the scope of conduct prohibited by that statutory provision and has eliminated the physical touching requirement that emerged from this court's judicial gloss on § 53-21 in *State* v. *Pickering*, 180 Conn. 54, 64–65, 428 A.2d 322 (1980), and *State* v. *Schriver*, supra, 207 Conn. 465–66. We disagree.

As a preliminary matter, we set forth our standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [fact finder] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jackson*, 257 Conn. 198, 204–205, 777 A.2d 591 (2001).

We begin our analysis with an overview of the language of § 53-21 (1) and the case law interpreting § 53-21, with particular emphasis on the conceptual distinction between the "situation" and "act" prongs of § 53-21 (1) and the emergence of the physical contact requirement as an element of an offense in cases involving acts of a sexual misconduct.

General Statutes (Rev. to 1997) § 53-21 (1) makes it a crime for any person "wilfully or unlawfully [to cause] or [to permit] any child under the age of sixteen years to be placed in such a *situation* that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, *or* [*to do*] *any act likely to impair the*

*health or morals of any such child . . . .*" (Emphasis added.) Although it is clear that "[t]he general purpose of § 53-21 is to protect the physical and psychological well-being of children from the potentially harmful conduct of [others]"; *State* v. *Payne,* 240 Conn. 766, 771, 695 A.2d 525 (1997); we long have recognized that subdivision (1) of § 53-21 prohibits two different types of behavior: "(1) deliberate indifference to, acquiescence in, or the creation of *situations* inimical to the [child's] moral or physical welfare . . . and (2) *acts* directly perpetrated on the person of the [child] and injurious to his [or her] moral or physical well-being."[8] (Citations omitted; emphasis added.) *State* v. *Dennis,* supra, 150 Conn. 250. "Cases construing § 53-21 have emphasized this clear separation between the two parts of the statute . . . ." *State* v. *Payne,* supra, 773.

We further interpreted the "act" prong of § 53-21 in *State* v. *Pickering,* supra, 180 Conn. 64–65, and *State* v. *Schriver,* supra, 207 Conn. 465–66, both of which involved challenges to the constitutionality of § 53-21 on vagueness grounds. In *Pickering,* the defendant, William Pickering, had sexually molested the victim on several occasions and also had sketched and photographed her while she was naked. *State* v. *Pickering,* supra, 180 Conn. 58–59. He thereafter was found guilty

---

[8] We reached this conclusion in *State* v. *Dennis,* supra, 150 Conn. 245, by examining the language and the legislative history of the statute. See id., 248–49. With respect to the former, we observed that the use of the disjunctive "or" between the two parts of the statute evinced a "clear legislative intent of separability." Id., 248. We further noted that such an intent also was apparent from the legislative history of the statute, which revealed that its parts were derived from two separate enactments: "[I]n 1921 the ['situation'] part of the statute was added to an existing statute. Public Acts 1921, c. 81, amending [General Statutes (1918 Rev.)] § 6205. It was separated therefrom in 1943, and the ['acts'] part [of the statute] was added. [General Statutes (Sup. 1943)] § 733g." *State* v. *Dennis,* supra, 249. On the basis of these observations, we concluded that "[t]he apparent legislative purpose in combining the two parts in a single section was to proscribe two general types of behavior . . . ." Id., 250.

of two counts of risk of injury to a child for committing acts "likely to impair the morals of a [child]" in violation of General Statutes (Rev. to 1975) § 53-21. Id., 56. Pickering filed certain postverdict motions with the trial court, claiming that § 53-21 was unconstitutionally vague. See id., 56–57. The trial court granted Pickering's motion to dismiss the information on the ground that § 53-21 was unconstitutionally vague under the facts of the case, and the state appealed. Id., 57. On appeal, we held that the statute was not constitutionally infirm, as applied to the facts of Pickering's case, because "[t]his court's opinions pursuant to § 53-21 make it clear that the deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner is violative of that statute." Id., 64. We further stated that "[§] 53-21 has been given a core by the opinions of this court which serve as an authoritative judicial gloss on the provision." Id., 65.

We reinstated the jury's guilty verdict in *Pickering* because the incidents that gave rise to each risk of injury count included an act involving Pickering's deliberate touching of the victim's private parts. See id., 58–59, 65, 66. Thus, we did not need to decide whether § 53-21 and our judicial gloss on that statute gave adequate warning that the taking of photographs and sketches of a naked child were forbidden by the statute. Id., 65–66. We stated that Pickering's deliberate touching of the victim's private parts alone was sufficient to render him "a hard-core violator as to whom the statute was not vague, whatever its implications for those engaged in different conduct." (Internal quotation marks omitted.) Id., 65.

In 1988, we considered another vagueness challenge to the "act" prong of § 53-21 in *State* v. *Schriver*, supra, 207 Conn. 456. In *Schriver*, the defendant, Dale Schriver, grabbed a thirteen year old girl by the waist and said, "Don't worry, all I want to do is feel you."

(Internal quotation marks omitted.) Id., 457. On the basis of that conduct, the state charged Schriver with one count of risk of injury to a child in violation of General Statutes (Rev. to 1985) § 53-21 for committing "an act likely to impair the health or morals of the victim." (Internal quotation marks omitted.) Id., 458. A jury found Schriver guilty of that charge, and he appealed, claiming that his conviction violated due process because § 53-21, as applied to the facts of his case, was unconstitutionally vague. Id. We agreed with Schriver and remanded the case with direction to vacate the judgment of conviction. Id., 458, 468.

We commenced our analysis in *Schriver* with an overview of the void for vagueness doctrine, drawing on the principles that we had set forth eight years earlier in *State* v. *Pickering*, supra, 180 Conn. 59–63. We explained: "The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . .

"In order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. . . . [A] facially vague law may nonetheless comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards. . . . For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue." (Citations omitted; internal quotation marks omitted.) *State* v. *Schriver*, supra, 207 Conn. 459–61.

We then proceeded to review the general features of § 53-21, noting that, "[o]n its face, § 53-21 fails to

articulate a definite standard for determining whether the conduct of [Schriver was] permitted or prohibited. '[A]ny act' may violate the statute so long as it is 'likely to impair' a minor's health or morals. Standing alone, the phrase 'any act' provides no guidance to potential violators, police officers or juries, particularly because specific intent is not an element of the offense as charged in this case. . . . Nor is the focus of the statute measurably narrowed by the phrase 'likely to impair.' In its ordinary meaning, this phrase would seem to authorize police officers and jurors to determine culpability subjectively, on an ad hoc basis. Rather than providing objective certainty, this phrase compounds the vagueness of the statute because it invites jurors to base criminal liability on their own moral [predilections] and personal predictions of likely harm." (Citations omitted.) Id., 461–62. After observing that other jurisdictions had deemed similar statutes unconstitutional, we concluded that, "[i]n like fashion, § 53-21 fails to manifest minimal guidelines by which innocent acts can be objectively and foreseeably distinguished from conduct that violates the statute. . . . [Consequently], the constitutionality of § 53-21 depends upon a determination of the extent to which prior decisions of this court have supplied sufficient guidelines to save the statute from its facial invalidity." (Citation omitted.) Id., 462.

We then considered the vagueness attack on the "morals" and "health" provisions of General Statutes (Rev. to 1985) § 53-21 in tandem; see id., 462, 466; because the state had alleged that Schriver's acts were injurious to either the "health *or* morals of the victim." (Emphasis added; internal quotation marks omitted.) Id., 458. With respect to the alleged act of moral impairment, we concluded that neither *Dennis* nor *Pickering* established an authoritative judicial gloss that would bring the defendant's conduct within the purview of § 53-21 for two principal reasons. "First, the *Dennis*

gloss, which purports to penalize acts directly perpetrated on the person of a [child] and injurious to his [or her] moral or physical well-being, is nearly as vague and indefinite as the language of the statute itself." (Internal quotation marks omitted.) Id., 464. Second, and most importantly, the facts of *Dennis* and *Pickering* "involved deliberate touching of private parts." Id., 465. We then concluded that *Pickering* established "the governing standard for prosecutions involving likely moral impairment of a minor." Id. Applying that standard, we concluded that Schriver's "grabbing the waist of a fully clothed minor while uttering a sexually suggestive remark [was] not the type of lewd conduct that § 53-21 proscribes." Id., 466.

We further concluded that Schriver's conduct did not fall within that part of § 53-21 proscribing acts that are likely to injure a child's health. Id. In so concluding, we declined to construe the term "health" to embody a child's mental health because the cases decided by this court had provided a judicial gloss that limited the type of harm prohibited by § 53-21 to deliberate and blatant acts of physical abuse.[9] Id.

Overall, the import of *Pickering* and *Schriver* was the establishment of a judicial method for interpreting and applying § 53-21 that comports with constitutional principles of due process of law. *Schriver*, moreover, adopted *Pickering* as the governing standard for prosecutions of acts involving the moral impairment of a child and endorsed a narrow reading of our holding in *Pickering*. See *State* v. *Schriver*, supra, 207 Conn. 465.

---

[9] We noted, however, that, "[u]nder different circumstances, the state might elect to prosecute under the first part of § 53-21, which proscribes the 'deliberate indifference to, acquiescence in, or the creation of situations inimical to the [child's] moral or physical welfare . . . .' *State* v. *Dennis*, supra, [150 Conn.] 250. A defendant need not physically touch a minor in order to violate that provision of § 53-21." *State* v. *Schriver*, supra, 207 Conn. 467.

*Schriver* also interpreted the phrase "act likely to impair the health . . . of . . . [a] child," contained in § 53-21, to proscribe only those acts that are directly perpetrated on the victim's person and that are or are likely to be injurious to the child's *physical* health.[10] See *State v. Schriver,* supra, 466.

In 1995, the legislature amended General Statutes (Rev. to 1995) § 53-21 as part of a broader initiative designed to strengthen penalties imposed on persons who commit sexual offenses against children and to require those persons to register as sex offenders. Public Acts 1995, No. 95-142, § 1 (P.A. 95-142). The amendment added, in express terms, a sexual offense to § 53-21. Designated as subdivision (2), the new language made it unlawful for any person to have "contact with the intimate parts . . . of a child under the age of sixteen years or [to subject] a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ." P.A. 95-142, § 1, codified at General Statutes (Rev. to 1997) § 53-21 (2). The amendment, however, did not modify in any mate-

---

[10] In *State* v. *Payne,* supra, 240 Conn. 766, we held that the word "health," as used in the "situation" prong or first part of General Statutes (Rev. to 1993) § 53-21, encompasses a child's mental health. Id., 776. We reconciled that holding with our holding in *Schriver* by explaining that the "situation" prong of General Statutes (Rev. to 1993) § 53-21 is intended to forbid a broader scope of conduct than that proscribed by the "act" prong or latter part of the statute. Id., 774. We explained: "[T]he first part of [General Statutes (Rev. to 1993)] § 53-21 prohibits the wilful creation of a 'situation' likely to impair the health of a child and thus encompasses the protection of the body as well as the safety and security of the environment in which the child exists . . . . The plain language of the first part of § 53-21 indicates the legislature's understanding that there is a broad class of intentional conduct that can put a child's well-being seriously at risk without any physical contact by the perpetrator. Thus, to limit the meaning of health to include only physical health under this [first] part of the statute would undermine the larger purpose of [General Statutes (Rev. to 1993)] § 53-21 to afford protection to a child from the potentially harmful wilful conduct of adults." (Citation omitted.) Id.

rial respect the prior language of the statute that this court had interpreted in *Pickering* and its progeny. See P.A. 95-142, § 1. Rather, the amendment merely designated, as subdivision (1), the entire pre-1995 amendment version of the statute, except that part designating the maximum sentence and fine that could be imposed upon sentencing.[11] Compare General Statutes (Rev. to 1995) § 53-21 with General Statutes (Rev. to 1997) § 53-21 (1).

Subsequent to the passage of the 1995 amendment, we decided *State* v. *Burton*, 258 Conn. 153, 778 A.2d 955 (2001). In *Burton*, we determined that a defendant need not *deliberately* touch a child's private parts in order to be found guilty of committing an act of moral impairment under the more general provision of General Statutes (Rev. to 1999) § 53-21 (1). See id., 160. Indeed, *Burton* made clear that any physical touching of a child that is committed in a sexual and indecent manner could be sufficient to sustain a conviction under the "act" prong of § 53-21 (1). See id.

In *Burton*, the defendant, Andrew Burton, lured a fourteen year old girl, who had known Burton for about three months, into his car as she was walking home from school. Id., 156. Once the victim entered the car

---

[11] The state argues that the 1995 amendment is proof that our judicial gloss proscribes a far narrower scope of conduct than that intended by the legislature. In particular, the state posits that if an act of moral impairment, as contemplated by the "act" prong of the statute, is limited to the deliberate touching of a victim's private parts, then the addition of subdivision (2) to the statute would have been "redundant surplusage." The state is incorrect on two levels. First, the 1995 amendment merely codified *Pickering* to the extent that it prohibited the deliberate touching of intimate parts and subjected acts of that nature to more stringent penalties, without limiting the scope of conduct that might be proscribed under the general provision contained in subdivision (1) of § 53-21. Second, the state's argument disregards this court's decision in *State* v. *Burton*, 258 Conn. 153, 778 A.2d 955 (2001). In *Burton*, we stated unequivocally that an act of moral impairment, as proscribed by General Statutes (Rev. to 1999) § 53-21 (1), is not limited to the deliberate touching of a victim's private parts. Id., 159–60.

and sat down in the passenger seat, the defendant reached across her, closed the passenger door and drove off. Id. As Burton was driving, he held the passenger door closed with his right hand, pinning the victim to her seat so that she could not exit the vehicle. Id. Burton began speaking to the victim, using harsh and sexually explicit language. See id., 156–57. After stopping the car a few moments later, he tried to kiss the victim and began to tug at her clothing. Id., 157. When the victim punched Burton in the stomach, he let go of the car door handle, and the victim was able to escape. Id. The defendant was charged and convicted of, inter alia, risk of injury to a child for committing an act likely to impair the morals of a child in violation of General Statutes (Rev. to 1999) § 53-21 (1). See id., 155.

On appeal, Burton argued that § 53-21 was unconstitutionally vague as applied to the facts of his case. Id., 157. We rejected that claim, reasoning that the Appellate Court's decision in *State* v. *Tucker*, 50 Conn. App. 506, 718 A.2d 979 (1998), appeal dismissed, 248 Conn. 668, 728 A.2d 1097 (1999),[12] which involved facts analogous

---

[12] In *Tucker*, the defendant, Joel Tucker, positioned himself on top of the eleven year old victim, face-to-face, and repeatedly tried to force his tongue into her mouth. *State* v. *Tucker*, supra, 50 Conn. App. 508. In between attempts to force his tongue into the victim's mouth, Tucker tried to prevent her from screaming by placing his hand over her mouth. Id. On the basis of that incident, a jury found Tucker guilty of violating the "act" prong of General Statutes (Rev. to 1995) § 53-21. See id., 509, 512. On appeal to the Appellate Court, Tucker argued that General Statutes (Rev. to 1995) § 53-21 was unconstitutionally vague as applied to the facts of his case. Id., 510. He contended that if the standard announced in *Pickering* is the standard by which to test whether one has committed an act of moral impairment in violation of § 53-21, his conviction could not stand because there was no proof that he deliberately touched the victim's private parts in a sexual or indecent manner. Id., 513. The Appellate Court rejected this argument, explaining that Tucker had "misconceive[d] the *Pickering* standard . . . ." Id. The court then advanced a broader reading of our decision in *Pickering*: "We do not interpret *Pickering* to stand for the proposition that a defendant violates the ['acts'] prong of § 53-21 *only* if he deliberately touches a [child's] private parts in a sexual and indecent manner. Rather, we interpret *Pickering* to mean that while a defendant who deliberately and improperly touches

to those in *Burton*; see id., 508; provided Burton with fair warning that his conduct was forbidden by § 53-21 (1). *State* v. *Burton*, supra, 258 Conn. 160. Quoting *Tucker*, we stated: "[W]hile a defendant who deliberately and improperly touches the private parts of a minor is clearly a hard-core violator of § 53-21, such conduct is not necessarily the only type of conduct that is proscribed under the statute." (Internal quotation marks omitted.) *State* v. *Burton*, supra, 159, quoting *State* v. *Tucker*, supra, 513–14.

Our decision in *Burton* is significant because it marked this court's willingness to interpret *Pickering* more expansively than we did in *Schriver*. In *Burton*, we interpreted the "act" prong of General Statutes (Rev. to 1999) § 53-21 (1) to prohibit sexually indecent acts that involve physical contact between the defendant and the victim, even when they fall short of deliberate touching of intimate parts. See *State* v. *Burton*, supra, 258 Conn. 159–60. The issue in this appeal, therefore, is whether we are inclined to adopt an even broader reading of *Pickering* that would eliminate the physical touching requirement altogether and forbid any sexual and indecent act as long as it is directed toward a child. We decline to take that step.

Although the risk of injury statute was amended in 1995 to forbid expressly the sexual and indecent touching of intimate parts, the more general statutory language that proscribes an "act likely to impair the health or morals of . . . [a] child," in subdivision (1) of § 53-21, has remained unchanged since this court's decision in *Schriver*. Compare General Statutes § 53-21 (a) (1)

---

the private parts of a [child] is *clearly* a hard-core violator of § 53-21, such conduct is not necessarily the only type of conduct that is proscribed under the statute." (Emphasis in original.) Id., 513–14. In accordance with that interpretation, the Appellate Court determined that Tucker's sexual and indecent acts toward the victim "violated the proscriptions of [General Statutes (Rev. to 1995)] § 53-21 pursuant to the *Pickering* standard." Id., 514.

with General Statutes (Rev. to 1987) § 53-21. The passage of time alone has not cured the facial vagueness of § 53-21 (1), nor has it altered the need to adhere to constitutional principles of due process of law in the application and enforcement of that statute. Cf. *State v. Schriver*, supra, 207 Conn. 459–61. Thus, the constitutionality of § 53-21 (1), as that statute is applied in any given case, continues to depend predominantly "upon a determination of the extent to which prior decisions of this court have supplied sufficient guidelines to save the statute from its facial invalidity." Id., 462. In order to render § 53-21 (1) constitutionally viable, the decisions of this court must state with reasonable particularity the conduct that is proscribed by that statute. To interpret the "act" prong of § 53-21 (1) in the manner advocated by the state would bring within the statute's sweep the type of mere sexually suggestive behavior that the court in *Schriver* found insufficient to sustain a conviction. See id., 466. In our view, such a reading would not provide the fair warning and ascertainable enforcement standards that are essential to due process of law. See id., 460–61. Moreover, "[w]ithout the aid of prior decisions to lend an authoritative gloss to the potentially limitless language of the statute, any effort to conform § 53-21 to the mandate of due process would necessarily entail a wholesale redrafting of the statute." Id., 468. As in *Schriver*, we decline to undertake that task, which lies "within the exclusive province of the legislature." Id. Accordingly, we interpret that portion of § 53-21 (1) prohibiting an act of moral impairment, insofar as it concerns sexual misconduct, to include within its purview only those sexual and indecent acts that involve a physical touching of the victim's person. Such touching, however, need not involve the private parts of either the victim or the defendant.

We now turn to the state's contention that the decisions of this court and the Appellate Court already have

eliminated the physical contact requirement of the "act" prong of § 53-21 (1).[13] It is noteworthy that the state has identified no case in which either this court or the Appellate Court has upheld a conviction of an accused who allegedly had engaged in a sexual and indecent "act" toward a child in violation of § 53-21 (1) without any physical contact between the accused and the child. Nevertheless, the state relies on *State* v. *March*, 39 Conn. App. 267, 664 A.2d 1157, cert. denied, 235 Conn. 930, 667 A.2d 801 (1995), in support of its contention that a physical touching of the victim's person is no longer required to violate the "act" prong of the statute. We find the state's reliance on *March* to be misplaced because the specific conduct at issue on appeal in that case did not involve a sexual act. Rather, the issue that the Appellate Court addressed in *March* was whether the giving of alcohol to a child could constitute a violation under the "act" prong of General Statutes (Rev. to 1991) § 53-21 (1). See generally id., 274–76. Because the defendant in the present case was not accused of committing an act of that nature, we need not concern ourselves with the *March* decision in order to resolve the limited issue in this appeal.

The state also directs our attention to *State* v. *Zwirn*, 210 Conn. 582, 556 A.2d 588 (1989), to illustrate that

---

[13] The crux of the state's argument is that our judicial gloss of the risk of injury statute has evolved over time, and, therefore, a physical contact requirement is no longer an essential element of the offense. In support of this argument, the state cites numerous cases in its brief that supposedly evince a departure from this court's holdings in *Dennis* and *Schriver* in ways that are not germane to this appeal. For example, the state relies on *State* v. *James*, 211 Conn. 555, 584–85, 560 A.2d 426 (1989), and a number of cases prosecuted under the "situation" prong of the statute, to show that an act likely to impair the health of a child no longer requires a showing of blatant, physical abuse. In another example, the state cites the Appellate Court's decision in *State* v. *Cutro*, 37 Conn. App. 534, 539–40, 657 A.2d 239 (1995), and states that intoxication is no longer a defense under the "situation" prong of the statute. Inasmuch as these contentions are irrelevant to the facts of the present case, we do not address them in this opinion.

case law supports the notion that "actions short of touching are sufficient if conducted in a 'sexual and indecent manner.' "[14] The state's reliance on our holding in *Zwirn* also is misplaced. In *Zwirn*, the defendant, Stephen B. Zwirn, physically touched the private parts of young children; see id., 586; but declared that his "acts were committed in a playful manner, not in a sexual or indecent manner as the state charge[d]." Id. On appeal, Zwirn claimed that the trial court erred in failing to instruct the jury that the "crime require[d] an element of sexual impropriety or indecency in the predicate act which the state claim[ed] was allegedly committed by [Zwirn]." Id., 587. We agreed with Zwirn and held that when a defendant is prosecuted for an act of physical contact with a child's private parts under the "act" prong of the risk of injury statute, the state must prove that the act was committed in a sexual and indecent manner. Id., 588. Nothing in our decision in *Zwirn*, however, eliminated the physical contact requirement of the "act" prong of § 53-21 (1).

In sum, neither *March* nor *Zwirn* supports the state's argument or fosters our resolution of the primary issue in the present appeal. Although we acknowledge that our interpretation of § 53-21 (1) has evolved insofar as an act of moral impairment is no longer limited to the deliberate touching of private parts; see *State* v. *Burton*, supra, 258 Conn. 159–60; we reject the state's claim that more recent jurisprudence has eviscerated the physical contact requirement that has been an integral part of our judicial gloss on the risk of injury statute for more than two decades. Nor are we inclined to abandon that touchstone in cases involving alleged sexual miscon-

---

[14] The state also relies on *State* v. *Palangio*, 24 Conn. App. 300, 304, 588 A.2d 644, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991), in support of this proposition. *Palangio*, however, involved, inter alia, the photographing of naked children; see id., 301; and the defendant therein was prosecuted under the "situation" prong of the risk of injury statute. See id., 303–304. *Palangio*, therefore, is factually and legally inapposite.

duct in the absence of further guidance from the legislature.

For the foregoing reasons, we conclude that, in cases concerning alleged sexual misconduct, an "act likely to impair the . . . morals of . . . [a] child"; General Statutes (Rev. to 1997) § 53-21 (1); must involve a physical touching of the victim's person in a sexual and indecent manner. Likewise, we conclude that an "act likely to impair the health . . . of . . . [a] child"; General Statutes (Rev. to 1997) § 53-21 (1); when committed in a sexual context, includes only those acts that involve a direct touching of the victim's person and are or are likely to be injurious to the victim's physical health. With that legal framework in mind, we now consider whether the evidence in the present case is sufficient to support the defendant's conviction on the three counts of risk of injury to a child in violation of § 53-21 (1), under which the defendant had been charged with committing acts likely to impair the health *or* morals of a child.

We agree with the Appellate Court that the evidence in support of the charges contained in counts one, four and five is insufficient to sustain the defendant's conviction on those counts. The defendant's act of asking F to place a syringe on his penis and his indecent exposure of his genitals to F and B, although clearly deplorable, do not qualify as acts likely to impair either the health or morals of a child because there is no evidence that the defendant physically touched either F or B when he committed those acts, a fact that must be established in order to sustain a conviction under the "act" prong of the risk of injury statute. We therefore conclude that the evidence adduced by the state at trial was insufficient, as a matter of law, to sustain the defendant's conviction on counts one, four and five of the information.

II

The state next contends that if a physical touching of the victim is necessary to sustain a conviction under the "act" prong of § 53-21 (1), then the Appellate Court improperly ignored evidence of a touching in the record when it evaluated the defendant's sufficiency of evidence claim. Specifically, the state claims that the Appellate Court did not consider F's testimony that the defendant had pushed her neck down toward his " 'private part,' " and that this testimony should have been sufficient to sustain the defendant's conviction on "one of the three counts" reversed on appeal. We disagree.

The following additional facts are necessary to our resolution of the state's claim. During the state's case-in-chief, the assistant state's attorney elicited testimony from F. He asked F whether the defendant had ever done anything to her that she did not like. F responded, "Yes." She then described the incident during which the defendant had laid on top of her while she was lying facedown on her bed and gyrated against her buttocks. The assistant state's attorney then asked F if there were other instances of conduct that had made her uncomfortable. F testified that, while she was at the defendant's house, she found a syringe in a dresser, and that the defendant had asked her to place it on his "private part . . . ." She explained that she did not comply with the defendant's request and returned the syringe to the dresser. The assistant state's attorney then asked F if the gyration and syringe incidents had occurred on the same day or on different days. F testified that the two episodes had occurred on different days. F acknowledged, however, that she could not recall whether the defendant had laid on top of her on more than one occasion, but that she definitely remembered it happening at least once. The assistant state's attorney then asked F whether there was "any other

thing that made [her] and anybody else uncomfortable when [she was] at [the defendant's] house . . . ." F responded: "Yeah. . . . When he used to take my neck and push it where his private part was." The assistant state's attorney did not ask F any further questions regarding that specific conduct. Instead, he asked a variation of his prior question, inquiring of F if there was any other time that she felt uncomfortable at the defendant's house when B, the younger victim, was with her. F then testified about the incident involving the defendant's exposure of his genitals to F and B after he had taken a shower. Defense counsel did not question F about the neck pushing incident during cross-examination, nor did he move to strike that testimony from the record.

At the close of the state's case-in-chief, defense counsel moved for judgment of acquittal. At that time, he sought to clarify his understanding of the specific acts that corresponded to each count. The assistant state's attorney then stated that the first count was based on F's testimony that the defendant had asked her to place a syringe on his penis, counts two and three were based on F's allegation that the defendant had gyrated against her buttocks, and counts four and five were based on the allegations of F and B that the defendant had exposed his genitals to them.[15] The assistant state's attorney did not assert, however, that any of the charges

---

[15] In particular, the assistant state's attorney stated: "With [regard] to the information, the first count involves the alleged conduct where there's been testimony from [F] that the defendant told her to put a syringe type instrument on his penis.

"The second and third counts, which are risk of injury to a [child] and assault in the fourth degree, those two counts go [to] the allegations [F] made of the defendant lying on top of her, clothes on in the bed, both the syringe incident and that incident occurring on the same day.

"The fourth and fifth counts are both risk of injury. Those go to the allegations made by both [F] for one count and [B] on the other count as to the defendant exposing his penis to them, and I apologize for not being clearer on [that] in the long form [information]."

contained in the information were based on F's allega-
tion that the defendant had pushed her neck down
toward his private parts. The trial court denied defense
counsel's motion for judgment of acquittal. Thereafter,
the assistant state's attorney, during his closing argu-
ment, again focused exclusively on the defendant's acts
involving the syringe, gyration and indecent exposure
without any reference to the neck pushing incident.
Following closing arguments, the court found the defen-
dant guilty on all counts.[16]

Before analyzing the state's claim, we reiterate the
appropriate standard of review. "In reviewing a suffi-
ciency of the evidence claim, we apply a two-part test.
First, we construe the evidence in the light most favor-
able to sustaining the verdict. Second, we determine
whether upon the facts so construed and the inferences
reasonably drawn therefrom the [fact finder] reason-
ably could have concluded that the cumulative force
of the evidence established guilt beyond a reasonable
doubt." (Internal quotation marks omitted.) *State* v.
*Jackson*, supra, 257 Conn. 204–205.

The state advances three interrelated propositions to
support its claim that the Appellate Court improperly
disregarded F's testimony regarding the neck pushing
incident in its evaluation of the sufficiency of the evi-
dence. The state first argues that it was not limited to
proving that the defendant committed the offenses in
any particular manner because the information was
nonspecific, and the defendant did not request a bill of
particulars. Second, the state contends that, even if
the assistant state's attorney did not mention the neck
pushing incident in his legal argument and summation,
it nevertheless constitutes viable evidence in the record.

---

[16] The trial court, in issuing its decision from the bench, did not articulate
the evidentiary bases in support of its finding of guilt on the risk of injury
counts. See Practice Book § 6-1.

Third, the state claims that if a defendant is found guilty by the fact finder, a reviewing court is bound to consider "all evidence" in its sufficiency analysis.

The defendant responds that the assistant state's attorney represented to the court on two occasions— once in response to defense counsel's motion for judgment of acquittal and again during closing arguments— that the risk of injury counts in the information were based solely on the syringe, gyration and indecent exposure incidents. The defendant posits that F''s testimony regarding the neck pushing incident was a complete surprise to the assistant state's attorney, and the fact that the assistant state's attorney did not refer to it once during trial shows that it was not the theory of the state's case against the defendant. As a result of these evidentiary developments, the defendant essentially argues that the state should not be able to invoke the testimony regarding the neck pushing incident for the first time on appeal to argue that his conviction on one of the three risk of injury counts should be sustained. We agree with the defendant.

In rejecting the state's claim, we emphasize that we are not departing from the well established principles relied on by the state in its brief and at oral argument. In particular, we acknowledge that when evaluating the evidence in support of a conviction, we generally do not confine our review to only that evidence relied on or referred to by counsel during the trial. Rather, we construe all relevant evidence in the record, as well as the reasonable inferences drawn therefrom, in a light most favorable to sustaining the verdict. E.g., id. Furthermore, we "defer to the [fact finder's] assessment of the credibility of the witnesses based on its first hand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) Id., 205. We also assume that the fact finder is free to consider all of the evidence adduced at trial in evaluating the defendant's

culpability, and presumably does so, regardless of whether the evidence is relied on by the attorneys. See *State* v. *Niemeyer*, 258 Conn. 510, 526–27, 782 A.2d 658 (2001).[17] We also recognize, however, that these principles cannot be applied in a vacuum. Rather, they must be considered in conjunction with an equally important doctrine, namely, that the state cannot change the theory of the case on appeal. See, e.g., *Dunn* v. *United States*, 442 U.S. 100, 105–107, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979); *State* v. *Torres*, 47 Conn. App. 205, 218, 703 A.2d 1164 (1997).

The "theory of the case" doctrine is rooted in principles of due process of law. *Dunn* v. *United States*, supra, 442 U.S. 106. In *Dunn*, the United States Supreme Court explained: "To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused." Id. The court further stated that "appellate courts are not free to

---

[17] The state cites *State* v. *Niemeyer*, supra, 258 Conn. 526–27, to bolster its assertion that a fact finder is not obliged to consider only that evidence to which the attorneys refer during trial and may consider all of the evidence adduced at trial. The relevant issue in *Niemeyer* was whether the defendant, Tony Niemeyer, was entitled to a new trial because the jury was instructed that it did not need to be unanimous with respect to whether the defendant had violated the first or third subparagraph of subdivision (2) of subsection (a) of Connecticut's first degree kidnapping statute. Id., 523–24. Niemeyer contended that the evidence relied on by the state, although sufficient under one subparagraph, would not constitute adequate proof under the other. See id., 526. In response to that contention, we explained that there was "nothing in the prosecutor's argument or in the trial court's instructions to suggest that the jury was not free to consider all of the evidence adduced at trial in evaluating [Niemeyer's] culpability under the two statutory subparagraphs." Id., 527. Although the issue in *Niemeyer* pertained to jury instructions, we agree with the state that the case nevertheless supports the general proposition that a fact finder, in assessing a defendant's culpability, is not bound to consider only that evidence to which the state refers or relies on at trial.

revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial." Id., 107. Subsequently, in *Chiarella* v. *United States*, 445 U.S. 222, 237 n.21, 100 S. Ct. 1108, 63 L. Ed. 2d 348 (1980), the United States Supreme Court observed that an isolated reference at trial to the theory of the case advanced on appeal is constitutionally insufficient to sustain a conviction on appeal.

The Court of Appeals for the First Circuit applied the *Dunn* principles in *Cola* v. *Reardon*, 787 F.2d 681 (1st Cir.), cert. denied, 479 U.S. 930, 107 S. Ct. 398, 93 L. Ed. 2d 351 (1986), a federal habeas action that involved facts that are somewhat analogous to the present case. In *Cola*, there was evidence in the record that would have been sufficient to sustain the petitioner's conviction, but the Court of Appeals held that the state appellate court should not have considered that evidence in support of the conviction because it was not part of the state's theory of the case at trial. Id., 693. In reaching that result, the Court of Appeals interpreted *Dunn* and its progeny as follows: "[I]n order for any appellate theory to withstand scrutiny under *Dunn*, it must be shown to be not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt that, upon [review of] the principal stages of trial, can be characterized as having been presented in a focused or otherwise cognizable sense." Id. We conclude that this statement is an accurate synthesis of *Dunn* and *Chiarella*. We therefore adopt it as the standard by which to gauge whether evidence introduced at trial, but not relied on by the state in its legal argument, is properly cognizable by an appellate court when evaluating the sufficiency of the evidence.

In the present case, it is clear from a review of the record that F's testimony regarding the neck pushing incident, when gauged by the standard announced in *Cola* v. *Reardon*, supra, 787 F.2d 693, was merely an

"incidental reference" that never formed a part of the state's theory of the defendant's guilt prior to this appeal. From inception, the state built its case against the defendant on three discrete acts of misconduct: the syringe, gyration and indecent exposure incidents. The victim did not allude to the neck pushing incident in her statement to the police. The affidavits submitted in support of the arrest and search warrants similarly contained no reference to this incident. Moreover, if, as the state contends, testimony regarding the neck pushing incident was "crucial evidence" in its case against the defendant, we find it odd that the assistant state's attorney did not attempt to develop that testimony further at trial. He made no effort to relate the neck pushing incident to the syringe, gyration and indecent exposure incidents, the three acts underlying the state's case against the defendant.[18] Nor did the assistant state's attorney ask F how and when the neck pushing had occurred.

In addition, the assistant state's attorney did not mention the neck pushing incident in his statement made in response to defense counsel's motion for judgment of acquittal at the conclusion of the state's case-in-chief. In fact, the assistant state's attorney contended that he

---

[18] The defendant did not appeal his conviction on counts two and three, under which he had been charged with risk of injury in violation of § 53-21 (2) and sexual assault in the fourth degree in connection with the gyration incident. On appeal to this court, the state argues that F's testimony regarding the neck pushing incident was sufficient to sustain the trial court's conviction on one of the three remaining counts of risk of injury contained in the information. The fact that the state cannot direct us to the specific count that should be upheld on the basis of F's testimony is further proof that the neck pushing incident never was related to the three acts of charged misconduct at trial, namely, the syringe, gyration and indecent exposure incidents. Moreover, because the defendant stands convicted on two counts in connection with the gyration incident, then, under the state's theory, the neck pushing incident would have to relate to either the syringe or indecent exposure incident. We find either scenario to be unlikely in view of F's testimony at trial.

had made out a prima facie case on all counts, citing the syringe, gyration and indecent exposure incidents, but not the neck pushing incident. In the state's summation of the evidence to the court at the end of the trial, no mention was made of this significant evidentiary linchpin. Indeed, the defendant observes correctly that the state did not refer to F's testimony regarding the neck pushing incident even once at trial after F had alluded to it during her testimony. To be sure, the neck pushing theory cannot be characterized as "a coherent theory of guilt" that was "presented in a focused or otherwise cognizable sense [at trial]." Id. Indeed, the record clearly establishes that the neck pushing theory was advanced by the state for the first time on appeal. We therefore conclude that the Appellate Court did not improperly disregard F's testimony concerning the neck pushing incident in its evaluation of the sufficiency of the evidence.

## III

We now turn to the state's final argument, namely, that the Appellate Court improperly applied a sufficiency of the evidence analysis to resolve the defendant's claim on appeal. Inasmuch as the Appellate Court stated in its decision that the evidence would have been sufficient to support a conviction under the "situation" prong of § 53-21 (1), which does not require a physical touching of the victim; see State v. Robert H., supra, 71 Conn. App. 295–96; the state argues that the Appellate Court should have evaluated the defendant's claim on appeal as an issue of notice. The state contends that, under a notice analysis, the defendant had the burden of proving that he lacked notice that he could have been convicted under the "situation" prong of § 53-21 (1), and that this lack of notice prejudiced his defense. The defendant suggests in his brief that this issue is not reviewable by this court. We agree with defendant.

The state did not brief its notice claim while the case was pending before the Appellate Court but, rather, raised this theory for the first time during oral argument before that court. The Appellate Court did not address the notice claim in its decision, presumably because the defendant never was charged under the "situation" prong of § 53-21 (1) and because the state had failed to brief that claim.

The state raised the notice claim again in its petition for certification to appeal to this court. We granted the state's petition for certification to appeal, but limited to the issue of whether "the Appellate Court properly conclude[d] that the defendant's convictions of risk of injury to a child under . . . § 53-21 must be reversed for insufficiency of the evidence . . . ." *State* v. *Robert H.*, 262 Conn. 913, 811 A.2d 1294 (2002). In light of these procedural facts, we conclude that the state's notice claim is not properly before this court because the state did not preserve it for appeal and the claim exceeds the scope of the certified question. We therefore decline to consider it.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.