******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v*. STEPHEN M. SABATO
(SC 19406)
(SC 19407)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued December 8, 2015—officially released June 28, 2016*

*Jacob L. McChesney*, special deputy assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Sean P. McGuinness*, assistant state's attorney, for the appellant in Docket No. SC 19406 and the appellee in Docket No. SC 19407 (state).

*Glenn W. Falk*, assigned counsel, with whom, on the brief, was *Victoria R. Pasculli*, law student intern, for the appellee in Docket No. SC 19406 and the appellant in Docket No. SC 19407 (defendant).

*Opinion*

PALMER, J. A jury found the defendant, Stephen M. Sabato, guilty of attempt to interfere with an officer in violation of General Statutes §§ 53a-167a (a)[1] and 53a-49 (a) (2),[2] and intimidating a witness in violation of General Statutes § 53a-151a (a) (1).[3] The defendant's conviction of attempt to interfere with an officer was predicated on a text message that the defendant had sent to a friend instructing him not to cooperate with police officers who were investigating the defendant's involvement in the theft of a cell phone; the conviction of intimidating a witness was predicated on a series of threatening messages that the defendant had sent to the same friend through Facebook, an online social networking service, after learning that he had cooperated with the police about the cell phone theft. The Appellate Court affirmed the defendant's conviction of intimidating a witness notwithstanding the defendant's claim that the evidence was insufficient to support his conviction of that offense. *State* v. *Sabato*, 152 Conn. App. 590, 597, 600, 98 A.3d 910 (2014). The Appellate Court reversed the defendant's conviction of attempt to interfere with an officer, however, after concluding that, under *State* v. *Williams*, 205 Conn. 456, 534 A.2d 230 (1987), fighting words[4] are the only form of speech proscribed by § 53a-167a, and the defendant's text message contained no such language. *State* v. *Sabato*, supra, 595–96, 600. We granted the state's petition for certification to appeal on three issues, one of which is whether this court should "modify *State* v. *Williams*, [supra, 456], to proscribe not only fighting words, but also true threats[5] and other categories of unprotected speech . . . ."[6] (Footnote added; internal quotation marks omitted.) *State* v. *Sabato*, 314 Conn. 938, 102 A.3d 1114 (2014). We granted the defendant's petition for certification to appeal, limited to the issue of whether the Appellate Court properly determined that there was sufficient evidence to convict him of intimidating a witness. *State* v. *Sabato*, 314 Conn. 938, 938–39, 102 A.3d 1113 (2014).

We conclude that the state is precluded from arguing that the defendant's text message constituted a true threat because the state never pursued such a theory of guilt at trial. See, e.g., *Cole* v. *Arkansas*, 333 U.S. 196, 200, 68 S. Ct. 514, 92 L. Ed. 644 (1948) ("[t]o sustain a conviction on grounds not charged in the information and which the jury had no opportunity to pass [on], deprives [a defendant] of a fair trial and a trial by jury, and denies [him] that due process of law guaranteed by the [fourteenth] [a]mendment to the United States [c]onstitution" [internal quotation marks omitted]). The state argued, rather, that the defendant committed the crime of attempt to interfere with an officer merely by asking his friend not to give a statement to the police, expression that the state acknowledges is constitutionally protected and, therefore, outside the purview of

§ 53a-167a (a). Indeed, because the state never argued that the defendant's text message was a true threat, the trial court did not instruct the jury on the definition of such a threat, as it would have been constitutionally required to do if the state had made such an argument. See, e.g., *State* v. *Moulton*, 310 Conn. 337, 362–63, 78 A.3d 55 (2013) ("to ensure that a prosecution . . . does not run afoul of the first amendment, the court must instruct the jury on the difference between protected and unprotected speech whenever the state relies on the content of a communication as substantive evidence of a [crime]"). With respect to the defendant's appeal, we conclude that the evidence supported his conviction of intimidating a witness. Accordingly, we affirm the judgment of the Appellate Court.[7]

The opinion of the Appellate Court sets forth the following facts, which the jury reasonably could have found. "On November 4, 2011, Jazmyn Lopez-Gay, accompanied by the defendant and other friends, visited a nightclub in [the city of] Danbury. While at the nightclub, her cell phone was stolen. The following day, she used an application on her computer to track the cell phone's location that indicated that it was near the Danbury [Fair] [M]all [mall]. She then called the Danbury police, who went to look for the cell phone but were unable to find it.

That same day, November 5, 2011, the defendant called Ian Mason, an acquaintance, and asked him to pick him up and drive him to the . . . mall. During that trip, the defendant sold Mason the cell phone. Because the cell phone was password protected, Mason was unable to access its functions or its contents. Seeking to gain access, Mason contacted Michael Barbour, a friend who used to perform work servicing cell phones, and brought the cell phone to his home in [the town of] Newtown.

"Meanwhile, occurring parallel to these events, Lopez-Gay again used the tracking application on her computer, which indicated that her cell phone was located at Barbour's home . . . . Lopez-Gay then called the Newtown Police Department, [which] sent . . . [O]fficer Michael McGowan to that location. Once there, McGowan spoke with Mason, who relinquished the cell phone.

"Later that night, Mason went to the Newtown Police Department. He was questioned by a police officer and eventually provided a sworn, written statement recounting how he came to possess the cell phone. Around this time, Mason sent a text message to the defendant telling him that he was at the police station. In response, the defendant sent a text message to Mason telling him not to write a statement and to 'keep [his] mouth shut.' The message scared Mason and caused him to hesitate before making his statement.

"At some point, the defendant discovered that Mason had made a statement to the police. On November 12, 2011, the defendant sent Mason a series of threatening Facebook messages. The messages shared similar content. In one message, the defendant wrote: 'U wrote a statement regardless. Hearsay is nothing they can't arrest u unless they have a statement and that's what u did u wrote a fucking statement. . . . I thought we were straight and u wouldn't be dumb enough to write a statement after telling u that day what we did to the last snitch. Ur a snitch kid that's what it comes down to and ur gonna get treated like a snitch u wrote that statement u best be ready for the shit u got urself into. U think it's a fuckin game and all this is fine and [we're] gonna be cool cause u got scared when the cops pressed u and u folded like every other snitch when they had NOTHING on either of us. U fucked up I'd watch out if I were u my boys are real pissed at u for this knowing I'm already in enough shit [as] it is. Don't worry about me worry about them period.'

"The defendant was charged with larceny in the fifth degree, attempt to interfere with an officer, and intimidating a witness." (Footnote omitted.) *State* v. *Sabato*, supra, 152 Conn. App. 592–94.

The charge alleging that the defendant had attempted to interfere with an officer was predicated solely on the November 5, 2011 text message that the defendant had sent to Mason instructing him not to give a statement to the police. The charge alleging that the defendant had intimidated a witness was based on the November 12, 2011 Facebook messages that he sent to Mason after he learned that Mason had given a statement to the police. Although the Facebook messages were admitted into evidence, the text message was not. The assistant state's attorney (prosecutor) questioned Mason about the contents of the text message, however, during the following colloquy:

"Q. . . . After you texted the defendant and told him that you were at the police station, what did he respond with?

"A. He asked me not to write a statement.

* * *

"Q. Did he tell you to keep your mouth shut?

"A. Yes."

Thereafter, during closing arguments, the prosecutor, in addressing the charge of attempt to interfere with an officer, argued that, when Mason "[went] down to the police station, [he] . . . indicates to the defendant that he is . . . there and . . . they have some sort of conversation, through text message, and the defendant indicates to him, you know, don't give a statement to [the] police." The prosecutor then explained that, in order to find the defendant guilty of attempt to interfere

with an officer, the jury must find that, "when the defendant sent those text messages to . . . Mason, he was attempting to hinder [the] investigation [by telling Mason], 'don't cooperate with the police . . . .' [T]hat's a substantial step; he didn't complete it, but he took that step. He is guilty of attempt to interfere with an officer." The prosecutor further argued that "the defendant is charged with attempted interference; he's not charged with interfering, and this is important because no one in this courtroom, especially me, is going to claim that the defendant was successful in his attempt to interfere with this investigation. In fact, he was unsuccessful, which led to the Facebook messages, which I'll be getting to a little bit later . . . ."

With respect to the charge of intimidating a witness, the prosecutor argued that, to find the defendant guilty of that offense, the jury must find that the defendant believed that an official criminal proceeding was about to be instituted and that he threatened Mason with physical harm in order to prevent him from testifying in that proceeding. The prosecutor argued that the defendant's Facebook messages established both elements of this offense because they demonstrated that the defendant was aware that a criminal proceeding was pending or about to be instituted and that he threatened Mason with physical harm to prevent him from testifying in that proceeding.

Subsequently, the jury found the defendant guilty of attempt to interfere with an officer and intimidating a witness.[8] The court thereafter rendered judgment in accordance with the jury's verdict and sentenced the defendant to one year incarceration on the interference charge and six years incarceration, execution suspended after three years, followed by five years of probation, on the intimidation charge. The sentences were to be served consecutively for a total effective sentence of seven years incarceration, suspended after four years, and five years of probation. *State* v. *Sabato*, supra, 152 Conn. App. 594.

The defendant appealed from the trial court's judgment to the Appellate Court, claiming, inter alia, "that § 53a-167a does not proscribe physical or verbal conduct directed against a third party, and thus . . . there was insufficient evidence to establish his guilt [under that statute] because his conduct was directed against Mason, and not a specific, identifiable police officer." Id., 595. The defendant further argued that applying § 53a-167a to conduct directed at Mason, which occurred outside the presence of a police officer, would render the statute unconstitutionally void for vagueness. Id. Finally, the defendant argued that there was insufficient evidence to convict him of intimidating a witness because the Facebook messages "did not constitute proof beyond a reasonable doubt that he intended to influence, delay or prevent Mason from

testifying in an official proceeding within the meaning of § 53a-151a." Id., 597. Following oral argument in the Appellate Court, that court, sua sponte, ordered the parties to file simultaneous supplemental briefs "addressing the applicability, if any, of the following language in *State* v. *Williams*, [supra, 205 Conn. 473] to the factual circumstances of this case: To avoid the risk of constitutional infirmity, we construe § 53a-167a to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace." (Internal quotation marks omitted.)

The Appellate Court thereafter concluded that the evidence was insufficient to convict the defendant of attempt to interfere with an officer because the state's long form information charged the defendant with violating §§ 53a-167a and 53a-49 solely on the basis of the defendant's text message, and it was undisputed that that message contained no language that reasonably could be construed as fighting words. *State* v. *Sabato*, supra, 152 Conn. App. 596. In light of that determination, the Appellate Court did not reach the defendant's claim that there was insufficient evidence to convict him of attempting to interfere with an officer because § 53a-167a does not proscribe conduct directed at someone who is not an officer.

The Appellate Court, however, rejected the defendant's claim that there was insufficient evidence to convict him of intimidating a witness. The court concluded that the November 12, 2011 Facebook messages were more than sufficient to sustain a finding that the defendant believed that the police were preparing to charge him with the theft of the cell phone, that he believed that Mason would be called to testify at the defendant's criminal trial, and that he threatened Mason to prevent him from testifying in that proceeding. See id., 598–99.

On appeal to this court following our granting of certification, the state argues, inter alia, that the Appellate Court incorrectly interpreted § 53a-167a as excluding from the statute's purview all forms of unprotected speech except fighting words. In the alternative, the state asks this court to "modify *Williams*' gloss to allow § 53a-167a to proscribe all forms of unprotected verbal conduct, including 'true threats' . . . ." In his appeal, the defendant claims that the Appellate Court incorrectly concluded that the evidence supported his conviction of intimidating a witness because the state failed to present evidence that the defendant believed that an official proceeding was about to be instituted or that he had a specific intent to influence, delay or prevent Mason's testimony at such a proceeding when he sent him the Facebook messages. We address each appeal in turn.

I

We first address the state's contention that the Appellate Court incorrectly concluded that § 53a-167a does not proscribe true threats or, alternatively, that this court should expand *Williams*' gloss to encompass such threats. The state also argues that, if this court concludes that § 53a-167a proscribes true threats, the evidence was sufficient to convict the defendant of attempt to interfere with an officer because the jury reasonably could have found that the defendant's text message, when viewed in light of the defendant's Facebook messages and certain other evidence, constituted a serious expression of an intent to physically harm Mason if he gave a statement to the police. The defendant contends, inter alia, that the state is attempting to salvage a conviction on the basis of a theory of guilt that was not alleged and was never presented to the jury, in violation of the defendant's right to due process of law. Specifically, the defendant argues that, because the state did not proceed under a theory that the defendant interfered with the police by threatening Mason with physical harm if he gave a statement to them, this court cannot evaluate the sufficiency of the evidence on the basis of such a theory. The state responds that its theory of guilt has always been "that the defendant attempted to interfere with police questioning of Mason by sending Mason a text message that was intended to frighten Mason out of speaking with the police," and, therefore, the defendant's contention that it has changed its theory of guilt on appeal is without merit. We agree with the defendant.

The following principles guide our analysis of the state's claim. Section 53a-167a (a) provides in relevant part that "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." We previously have interpreted "§ 53a-167a to cover some acts of verbal resistance as well as acts of physical resistance. Although the statute does not explicitly define the nature of the acts that fall within its ambit, 'resistance,' as commonly understood, encompasses both verbal and physical conduct. . . . The inclusion of verbal conduct does not, per se, leave the statute so open-ended that it lends itself to arbitrary enforcement. The statute's requirement of intent limits its application to verbal conduct intended to interfere with a police officer and excludes situations in which a defendant merely questions a police officer's authority or protests his or her action." (Citation omitted.) *State* v. *Williams*, supra, 205 Conn. 471–72. Noting, however, that "this court has the power to construe state statutes narrowly to comport with the constitutional right of free speech" and "[t]o avoid the risk of constitutional infirmity"; id., 473; the court in *Williams* "construe[d] § 53a-167a to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite

an immediate breach of the peace." (Internal quotation marks omitted.) Id. Such a construction, we explained, "preserves the statute's purpose to proscribe 'core criminal conduct' that is not constitutionally protected." Id., 474. "[I]n accordance with the purpose underlying this judicial gloss, a defendant whose alleged threats form the basis of a prosecution under any provision of our Penal Code . . . is entitled to an instruction that he could be convicted as charged only if his statements . . . constituted a true threat, that is, a threat that would be viewed by a reasonable person as one that would be understood by the person against whom it was directed as a serious expression of an intent to harm or assault, and not as mere puffery, bluster, jest or hyperbole." (Internal quotation marks omitted.) *State* v. *Moulton*, supra, 310 Conn. 367–68.

"In reviewing the sufficiency of the evidence to support a criminal conviction, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We assume that the fact finder is free to consider all of the evidence adduced at trial in evaluating the defendant's culpability, and presumably does so, regardless of whether the evidence is relied on by the attorneys. . . . When the state advances a specific theory of the case at trial, however, sufficiency of the evidence principles cannot be applied in a vacuum. Rather, they must be considered in conjunction with an equally important doctrine, namely, that the state cannot change the theory of the case on appeal. . . .

"The theory of the case doctrine is rooted in principles of due process of law. . . . In *Dunn* [v. *United States*, 442 U.S. 100, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979)], the United States Supreme Court explained: To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused. . . . [A]ppellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial. . . .

"[I]n order for any appellate theory to withstand scrutiny under *Dunn*, it must be shown to be not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt that, upon [review of] the principal stages of trial, can be characterized as having been presented in a focused or otherwise cognizable sense. . . . Thus . . . we must analyze the evi-

dence adduced at trial to determine whether, when considered in light of the state's theory of guilt at trial, the state presented sufficient evidence . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Carter*, 317 Conn. 845, 853–54, 120 A.3d 1229 (2015).

As we previously indicated, the state denies that its theory of guilt on appeal is different from what it was at trial. The state asserts that, although the prosecutor maintained in his closing argument that the defendant committed the crime of attempt to interfere with an officer by instructing Mason, via text message, not to cooperate with the police, "[t]his one statement . . . does not constitute an exclusive theory of guilt disavowing the circumstances surrounding the text messages that demonstrated the true threatening nature of the text message and explained Mason's intense fearful response to it." The state also contends that, because the prosecutor referred to Mason's fear and one of the defendant's threatening Facebook messages while discussing the interference charge, he "[implicitly] presented [the] theory that the defendant's attempt to interfere was based on his attempt to frighten Mason out of providing a statement to the police." The state's contention is without merit.

A review of the record reveals that, although the prosecutor made reference to Mason's fear and one of the Facebook messages in his closing argument, both references were made in the context of rebutting defense counsel's argument that the state had failed to prove that it was the defendant and not someone else who sent the November 5, 2011 text message to Mason, not to demonstrate that the text message was intended to communicate a serious expression of an intent to harm Mason if he cooperated with the police. Specifically, the prosecutor argued: "[A]s we're thinking about credibility . . . Mason told you that he was receiving these text messages [from the defendant] and that is consistent with what the officers told you, that he was receiving texts and that he was, in fact, frightened . . . . And, also, let's go back to the Facebook messages, as [they relate] to this charge, referring to the Facebook message that this defendant sent . . . on November 12, 2011, [telling Mason] 'never write a statement, ever, I talked with you about that that day' . . . . And, so, [we have] . . . consciousness of guilt. This defendant said, 'I told you that day not to write a statement.' Why is that important? Because . . . Mason told you he was receiving those text messages. Ladies and gentlemen, that is the equivalent of a confession to attempt to interfere with an officer." The prosecutor's explanation as to why the Facebook messages were relevant to the interference charge is consistent with his response, earlier in the trial, when asked by the court whether the Facebook messages were being offered solely in relation to the larceny[9] and intimidation charges. The prosecutor responded that they were also

relevant to the interference charge because, in one of the messages, the defendant "basically admits to sending the text and telling [Mason] not to write a statement . . . ."

At no time did the prosecutor suggest that the Facebook messages—or any other evidence for that matter—were relevant to the interference charge because they helped to prove that the defendant's November 5, 2011 text message, although neutral on its face, was intended to communicate a serious expression of an intent to harm Mason if he cooperated with the police. Cf. *State* v. *Robert H.*, 273 Conn. 56, 82–85, 866 A.2d 1255 (2005) (under theory of case doctrine, when state did not present sexual act by defendant as culpable conduct at trial, state could not rely on that act on appeal to support jury's verdict in response to sufficiency challenge). Indeed, the prosecutor never uttered the words "threat" or "threatening" in relation to the text message, even though, as the state acknowledges, under a true threat theory of guilt, the state bore the burden of establishing beyond a reasonable doubt that the text communicated such a threat. See, e.g., *State* v. *Krijger*, 313 Conn. 434, 458, 97 A.3d 946 (2014) ("[When] a communication contains language [that] is equally susceptible of two interpretations, one threatening, and the other nonthreatening, the government carries the burden of presenting evidence serving to remove that ambiguity. [In the absence of] such proof, the trial court must direct a verdict of acquittal." [Internal quotation marks omitted.]). Rather, as we previously indicated, the prosecutor referred to the November 5, 2011 text message exchange between Mason and the defendant as "some sort of conversation" in which "the defendant indicates to [Mason], you know, don't give a statement to [the] police." According to the prosecutor, it was that statement—"don't give a statement to [the] police"—that constituted the actus reus of the offense. As we have explained, however, and as the state concedes, § 53a-167a does not proscribe such verbal conduct, and, therefore, the defendant's conviction under that statute cannot stand.

Our determination that the state did not pursue a theory of guilt predicated on threatening language is strongly reinforced by the fact that the trial court did not instruct the jury on the true threat doctrine. Of course, the trial court never gave such an instruction because the state never claimed that the defendant's text message constituted a true threat. A true threat instruction is required, however, in any case in which the defendant's threatening speech forms the basis of the prosecution because only a true threat may be prosecuted under the first amendment. E.g., *State* v. *Moulton*, supra, 310 Conn. 367–68 ("a defendant whose alleged threats form the basis of a prosecution under any provision of our Penal Code . . . is entitled [under the first amendment] to an instruction that he could

be convicted as charged only if his statements . . . constituted a true threat" [internal quotation marks omitted]). Accordingly, and for the reasons previously set forth in this opinion, the state cannot prevail on its claim that the evidence was sufficient to convict the defendant of attempt to interfere with an officer based on the theory that the defendant's November 5, 2011 text message constituted a true threat.

II

We next address the defendant's appeal, in which he claims that the Appellate Court incorrectly determined that the evidence was sufficient to convict him of intimidating a witness in violation of § 53a-151a (a). The defendant argues that, although the evidence supported a finding that he threatened Mason for "snitch[ing]," it did not support a finding that he believed that an official proceeding was imminent when he did so, or that his intention was to prevent Mason's testimony in such a proceeding. We disagree.

Section 53a-151a (a) provides in relevant part: "A person is guilty of intimidating a witness when, believing that an official proceeding is pending or about to be instituted, such person uses, attempts to use or threatens the use of physical force against a witness or another person with intent to (1) influence, delay or prevent the testimony of the witness in the official proceeding . . . ." General Statutes § 53a-146 (6) defines "witness" as "any person summoned, or who may be summoned, to give testimony in an official proceeding." In *State* v. *Ortiz*, 312 Conn. 551, 93 A.3d 1128 (2014), this court explained that the phrase "believing that an official proceeding is pending or about to be instituted," as used in General Statutes § 53a-151 (a),[10] the witness tampering statute, is satisfied "as long as the defendant believes that an official proceeding will probably occur, [and] it does not matter whether an official proceeding is actually pending or is about to be instituted." (Emphasis omitted.) *State* v. *Ortiz*, supra, 569. In light of the close relationship between §§ 53a-151 (a) and 53a-151a (a), it is appropriate to give the same phrase in each statute the same meaning. See, e.g., *State* v. *Grant*, 294 Conn. 151, 160, 982 A.2d 169 (2009) ("ordinarily, the same or similar language in the same statutory scheme will be given the same meaning").

Applying the foregoing definitions to the present facts, we agree with the Appellate Court that the defendant's November 12, 2011 Facebook messages amply supported a finding that the defendant believed that an official proceeding would probably occur and that Mason would probably be summoned to testify at that proceeding. As the Appellate Court explained, "[i]n one Facebook message, the defendant acknowledged that the police were 'getting warrants' and 'building a case' against him. In a different message, the defendant

wrote, 'I'll eat the charge . . . .' In yet another message, the defendant told Mason that he was 'already in enough shit [as] it is.' From these statements [alone], the jury reasonably could have inferred that the defendant believed that an official proceeding probably would be instituted." *State* v. *Sabato*, supra, 152 Conn. App. 598.

"Similarly, the record establishe[d] that there was sufficient evidence for the jury to conclude that the defendant believed that Mason probably would be summoned to testify. The term witness is broad, as it includes any person summoned, or *who may be summoned*, to give testimony . . . . General Statutes § 53a-146 (6). The Facebook messages show that the defendant knew that Mason had provided a statement implicating him in the cell phone theft. It was therefore reasonable for the jury to infer that the defendant believed that Mason probably would be called to testify in conformity with that statement at a future proceeding." (Emphasis in original; internal quotation marks omitted.) *State* v. *Sabato*, supra, 152 Conn. App. 598–99. Indeed, the defendant stated in one of those messages, "it's YOUR statement that is gonna fuck it up," thereby demonstrating the defendant's clear understanding that Mason's testimony would be critical at such a proceeding.

We also agree with the Appellate Court that the evidence supported the jury's finding that the defendant, in threatening Mason, intended to influence, delay or prevent Mason's testimony at a criminal trial. As the Appellate Court observed, "in one Facebook message, the defendant wrote, 'Ur gonna learn the hard way that snitches get what's comin to em straight the fuck up.' In a later message, the defendant wrote: 'Bro snitches get fucked up . . . . The term snitches get stitches is because of snitches. . . . U know that this shit isn't gonna just be left alone for what u did. I just hope ur ready and prepared for the repercussions for ur actions cause I sure am. I'll see u very soon.' In yet another message, the defendant wrote, 'just know that this shit isn't gonna go unsettled and u can take it how u want but shit is gonna get handled . . . .' In his final message, the defendant wrote: 'I thought we were straight and u wouldn't be dumb enough to write a statement after telling u that day what we did to the last snitch. . . . [U]r gonna get treated like a snitch . . . . [U] best be ready for the shit u got urself into. . . . I'd watch out if I were u . . . .' " *State* v. *Sabato*, supra, 152 Conn. App. 599. On the basis of this evidence, the Appellate Court concluded, and we agree, that the "jury reasonably could have inferred that the defendant intended the natural consequences of these threats, which would have included the influence, delay or prevention of Mason's testimony at a future proceeding." Id.

Indeed, the present case is virtually identical to *State* v. *Ortiz*, supra, 312 Conn. 551. In that case, the defen-

dant, Akov Ortiz, was convicted of tampering with a witness in violation of § 53a-151 (a) on the basis of the jury's finding that he threatened a witness with physical harm if she gave a statement to the police. Id., 553, 557. On appeal, Ortiz claimed that the evidence was insufficient to convict him because § 53a-151 (a) "does not proscribe attempts to prevent an individual from speaking to the police" but does proscribe "[attempts] to affect a witness' conduct at an official proceeding." Id., 554. Although we agreed with Ortiz' reading of the statute, we nevertheless concluded that the evidence supported his conviction because the jury reasonably could have inferred that Ortiz "intended the natural consequences of [his] threat—that [the witness] not only withhold information from the police but also withhold testimony or provide false testimony at a future official proceeding." Id., 573. As in *Ortiz*, the jury in the present case reasonably could have inferred that the defendant, in threatening Mason because of his prior cooperation with the authorities, necessarily intended to convey to Mason that any future cooperation would be treated in the same manner.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties."

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 53a-151a (a) provides in relevant part: "A person is guilty of intimidating a witness when, believing that an official proceeding is pending or about to be instituted, such person uses, attempts to use or threatens the use of physical force against a witness or another person with intent to (1) influence, delay or prevent the testimony of the witness in the official proceeding . . . ."

[4] We previously have described fighting words as "speech that has a direct tendency to cause imminent acts of violence or an immediate breach of the peace. Such speech must be of such a nature that it is likely to provoke the average person to retaliation." (Internal quotation marks omitted.) *State* v. *Szymkiewicz*, 237 Conn. 613, 620, 678 A.2d 473 (1996), quoting *Texas* v. *Johnson*, 491 U.S. 397, 409, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989).

[5] "True threats encompass those statements [in which] the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." (Internal quotation marks omitted.) *State* v. *Moulton*, 310 Conn. 337, 349, 78 A.3d 55 (2013).

[6] This court certified the following three issues in the state's appeal: "1. Did the Appellate Court properly determine that there was insufficient evidence to convict the defendant of attempt to interfere with an officer in violation of . . . [§§] 53a-167a [and 53a-49]?

"2. If the answer to the first question is in the affirmative, should this court modify *State* v. *Williams*, [supra, 205 Conn. 456], to proscribe not only fighting words, but also true threats and other categories of unprotected speech?

"3. Under the circumstances of this case, was the lack of a jury instruction on true threats harmless?" (Internal quotation marks omitted.) *State* v.

*Sabato*, 314 Conn. 938, 102 A.3d 1114 (2014).

[7] Because we reject the state's threshold contention that it has not altered its theory of guilt on appeal, we need not reach the other issues presented in its appeal, namely, whether true threats fall within the purview of § 53a-167a (a) and, if they do, whether the state presented sufficient evidence to support a finding that the defendant's November 5, 2011 text message communicated such a threat, and whether the defendant waived his right to an instruction on true threats or, alternatively, whether the trial court's failure to give such an instruction was harmless error. Our determination that the state has changed its theory of guilt on appeal also makes it unnecessary to decide the defendant's claim, which the Appellate Court did not reach, that § 53a-167a (a) does not proscribe the conduct at issue in this case.

[8] The defendant also was charged with larceny in the fifth degree for the alleged theft of the cell phone. The jury could not reach a unanimous verdict on that count, however, and the court declared a mistrial as to that charge, which is not the subject of this appeal.

[9] See footnote 8 of this opinion.

[10] General Statutes § 53a-151 (a) provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding."

We previously have observed that "the purpose of part XI of the Connecticut Penal Code, in which § 53a-151 (a) [and § 53a-151a (a) are] found, [is to] punish those who interfere with the courts and our system of justice." (Internal quotation marks omitted.) *State* v. *Ortiz*, supra, 312 Conn. 562.

———————————————